BEULAH S. HILLER, Plaintiff-Appellee, *v.* F. W. HARSH, JR., *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 79-2284

Opinion filed September 9, 1981.

Berman and Trachtman, of Chicago (Michael H. Berman, of counsel), for appellants.

Barry Weiss, of Topper and Weiss, Ltd., of Chicago (William J. Harte, of counsel), for appellee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The plaintiff, Beulah S. Hiller, filed this action to recover for personal injuries she claimed to have sustained when she fell on the rear stairs of the building managed by defendant, F. W. Harsh, Jr., and owned by defendant, Jane Dent Homes, Inc. At the close of the plaintiff's case, the trial judge granted the defendants' motion for a directed verdict on the plaintiff's count for wilful and wanton negligence but denied the motion for a directed verdict on the plaintiff's count for ordinary negligence. The jury returned a verdict in plaintiff's favor in the amount of $40,000 on the latter count and found by way of special interrogatory that the plaintiff was not guilty of contributory negligence. Judgment was entered on the verdict, and the defendants' post-trial motion was denied. The defendants have appealed.

The defendants present the following issues for review: (1) whether the jury verdict was against the manifest weight of the evidence, (2) whether the trial court erred in denying the defendants' motion for a directed verdict on the ordinary negligence count, (3) whether the trial court erred in giving and denying certain jury instructions, and (4) whether the court erred in refusing to tender the defendants' special interrogatory.

Beulah Hiller testified that on the morning of August 30, 1975, she slowly ascended the rear stairway of the defendants' building to visit the defendants' tenants, Parnell and Ewing Hannah. The plaintiff lived two

houses away and had employed the Hannahs as her janitors. Hiller testified that she went to the Hannahs' residence to pay them for work they had done for her, to ask them to clean her yard and to request permission for a Mr. Freeman to go to the roof of the building to view her roof for damage. The plaintiff's two-story building and the building where the Hannahs lived, which was a three-story building, each shared a common wall with a two-story building in between them.

After Freeman came down from the roof, the plaintiff slowly descended the rear stairway opposite the side she had ascended, holding on to the bannister and taking one step at a time. When she noticed a raised step, near the bottom of the stairway, she moved to the middle of that step to avoid the irregularity. The step gave way and the plaintiff fell, sustaining injury. The plaintiff stated that she had used the stairs on a prior occasion without problem and that when she ascended the stairs on the day of her injury, she looked at them, saw nothing wrong and had no difficulty in walking on them.

Parnell Hannah testified that on the day the plaintiff was injured, she came to see him to ask him to clean her yard and to pay him for past services. She also brought a Mr. Freeman to go upon the roof of the building where the Hannahs lived. Mr. Hannah stated that prior to the date of the plaintiff's fall, the wooden steps between the ground and his first floor apartment were rotten and that the two bottom steps had been broken for quite some time. He said that this condition was noticeable and that he had brought it to the defendants' attention two or three times prior to the day the plaintiff fell. Hannah also testified that on several previous occasions, the plaintiff delivered his pay to him.

Ewing Hannah testified that the bottom two steps of the stairway leading to her apartment were rotten, loose, slanted and that the foundation underneath had given way. The second step from the bottom would give way when stepped upon and the bannisters would shake. That step had slid off the foundation. She also testified that she first noticed the condition of the stairs a year before the plaintiff fell and said the condition was visible on the day of that occurrence. Mrs. Hannah stated that she informed the defendants of this condition more than once, the most recent time being three months before the plaintiff was injured. She also stated that the plaintiff had come to her apartment on occasions prior to her fall, the most recent time being a month prior to that day.

The defendants initially contend on appeal that the above-elicited and uncontroverted testimony shows that the dangerous condition of the rear stairs was easily visible and obvious and had existed for some time. They argue that the plaintiff was guilty of contributory negligence and that the jury's verdict and answer to the special interrogatory on contributory negligence were against the manifest weight of the evidence.

The defendants rely on *Killeen v. R. W. Dunteman Co.* (1979), 78 Ill. App. 3d 473, 397 N.E.2d 436, wherein the court found that the plaintiff was guilty of contributory negligence as a matter of law because the plaintiff testified that she was aware of the defective condition of the parking lot surface, looked at the ground as she walked and without distractions stepped into a depression and fell.

A party is guilty of contributory negligence if he fails to exercise ordinary care for his own safety and if his negligence is the proximate cause of his injury. (*Old Second National Bank v. Baumann* (1980), 86 Ill. App. 3d 547, 408 N.E.2d 224.) What constitutes contributory negligence cannot be defined in exact terms, and each case must be determined on its own facts and circumstances. (*Newton v. Meissner* (1979), 76 Ill. App. 3d 479, 394 N.E.2d 1241.) The question of contributory negligence is ordinarily a question of fact for the jury to decide (*e.g., Kuhn v. General Parking Corp.* (1981), 98 Ill. App. 3d 570, 424 N.E.2d 941; *Bitner v. Central Illinois Light Co.* (1979), 75 Ill. App. 3d 715, 394 N.E.2d 492), and the reviewing court will not set aside a jury's verdict on the ground that it is contrary to the manifest weight of the evidence unless it is obvious that the jury arrived at the wrong conclusion (*Derrico v. Clark Equipment Co.* (1980), 91 Ill. App. 3d 4, 413 N.E.2d 1345).

■■ We have reviewed the evidence presented at the trial in the case at bar and believe that an evidentiary basis existed for the jury's conclusion that the plaintiff was not guilty of contributory negligence. The Hannahs testified that the steps were rotten and that their loosened condition was noticeable and had existed for some time. We note, however, that the plaintiff testified that she had had no difficulty when she had used the steps on occasions prior to the day she fell. The plaintiff further said that on the day of her injury, she had had no difficulty ascending the stairs. It was only when she slowly descended the stairs, while holding on to the bannister, that she noticed an irregular step. At that point, she tried to avoid the defect by moving to the side of the stair. It was at this time that the step gave way and the plaintiff fell. We believe that the plaintiff's testimony supports a conclusion that the plaintiff exercised ordinary care for her own safety by slowly descending the stairway and changing her course of descent when she discovered a defect in the stair. Thus, the jury's verdict and answer to the special interrogatory were not against the manifest weight of the evidence.

The defendants' second argument on appeal is that the trial court erred in denying their motion for a directed verdict on the ordinary negligence count. The defendants' motion argued that the plaintiff's status on the defendants' premises was that of a licensee rather than an invitee, so that the defendants did not owe to the plaintiff a duty to exercise ordinary care to see that the stairs in their building were reasonably safe.

The Supreme Court of Illinois has recently refused to discard the premises doctrine, which defines the type of duty owed by an owner or occupier of land based upon a determination of the status of the injured person upon that land, *i.e.*, invitee, licensee or trespasser. (*Pashinian v. Haritonoff* (1980), 81 Ill. 2d 377, 410 N.E.2d 21.) Generally, an invitee is a visitor who comes upon the premises at the invitation of the owner in connection with the owner's business or related activity, while a licensee is a person who without invitation and for his own purposes comes upon the owner's premises. (*Tanari v. School Directors* (1977), 69 Ill. 2d 630, 373 N.E.2d 5.) Social guests and licensees are not entitled to recover for injuries sutained on the owners' premises in the absence of a showing of wilful and wanton misconduct. (*Pashinian v. Haritonoff; Fountaine v. Hadlock* (1971), 132 Ill. App. 2d 343, 270 N.E.2d 222; see *Tripp v. Hale* (1979), 74 Ill. App. 3d 200, 392 N.E.2d 748.) Invitees may recover when they can show that the owner of the premises has breached his duty of reasonable care in keeping the premises reasonably safe. See *Barmore v. Elmore* (1980), 83 Ill. App. 3d 1056, 403 N.E.2d 1355; *Carroll v. Lily Cache Builders, Inc.* (1979), 74 Ill. App. 3d 264, 392 N.E.2d 986.

■■ The scope of the duty of a landowner to persons on his property changes, however, when the landowner leases a part of that property and retains control over common areas such as stairways. It is well settled that under such circumstances the landlord has the duty of exercising reasonable care to keep those areas in a reasonably safe condition and that the landlord is liable for injuries to persons lawfully on those premises due to his failure to perform this duty. (*Murphy v. Illinois State Trust Co.* (1940), 375 Ill. 310, 31 N.E.2d 305; *Manns v. Stein* (1968), 99 Ill. App. 2d 398, 241 N.E.2d 691. See generally 49 Am. Jur. 2d *Landlord & Tenant* §810 (1970); 52 C.J.S. *Landlord & Tenant* §417(7) (1968); Restatement (Second) of Torts §360 (1965).) The status of the injured person on such premises is important only to the extent that that person is lawfully on the premises since the duty of reasonable care has been imposed upon the landlord whether the injured person was a tenant (*Mangan v. F. C. Pilgrim & Co.* (1975), 32 Ill. App. 3d 563, 336 N.E.2d 374; *Campbell v. Harrison* (1973), 16 Ill. App. 3d 570, 306 N.E.2d 643; *Gula v. Gawel* (1966), 71 Ill. App. 2d 174, 218 N.E.2d 42), an employee of a tenant (*Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 247 N.E.2d 877), a business invitee of a tenant (*Murphy v. Illinois State Trust Co.*), or a social guest of a tenant (*Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 656, 299 N.E.2d 108; *Kahler v. Marchi* (1940), 307 Ill. App. 23, 29 N.E.2d 854). *Cf. Moss v. Hunding* (1960), 27 Ill. App. 2d 189, 169 N.E.2d 396, and *Shiroma v. Itano* (1956), 10 Ill. App. 2d 428, 135 N.E.2d 123 (guest of tenant classified as invitee).

The term "lawfully on the premises" was first construed in *Shiroma v.*

*Itano*. In *Shiroma* the court looked to the legal status of the injured person in relation to the tenant and held that the term "lawfully" unquestionably extended the landlord's duty of reasonable care to business invitees, social invitees and licensees of the tenant. The duty to refrain from wilful and wanton misconduct was found applicable only to trespassers injured upon areas of the leased premises that the landlord retained control over. The rationale for such a construction has been stated as follows:

> "A lessor may be liable to an invitee or even to a licensee of the lessee, although neither he nor the lessee would be liable under the same circumstances to their own invitees or licensees. The privilege of the visitor is not based, as is that of the lessor's own invitee or licensee, upon the consent given upon the occasion of the particular visit, but upon the fact that he is entitled to enter by the right of the lessee, who is entitled under his lease to use the part of the land within the control of the lessor not only for himself, but also for the purpose of receiving any persons whom he chooses to admit." Restatement (Second) of Torts §360, Comment *c* (1965).

■■ The defendants contend in the case at bar that the plaintiff was a licensee of the Hannahs because she came upon the premises of the defendants' building for her own benefit, namely, to seek permission for Mr. Freeman to go upon the defendants' roof so that her own roof could be inspected for damage. We note, though, that the plaintiff testified that she went to the Hannahs' apartment to pay them for their past janitorial services and to ask them to do additional work for her as well as to request permission for Mr. Freeman to go to the roof of the building. In view of the principles discussed above, however, the reasons for the plaintiff's presence on the defendants' property are irrelevant. As it is undeniable that the plaintiff was lawfully on the common area of the defendants' premises, her legal status as an invitee or social guest or licensee of the Hannahs is unimportant since the same duty of reasonable care is imposed upon the defendants to keep the common areas reasonably safe. For these reasons, the trial court did not err in denying the defendants' motion for a directed verdict on the ordinary negligence count.

■■ We also reject the defendants' argument that the trial court committed error in giving plaintiff's instruction which stated that the defendants' duty to the plaintiff was to exercise reasonable care. Similarly, it was not erroneous to refuse to instruct the jury regarding the difference between a licensee and an invitee and to refuse to give defendants' special interrogatory asking the jury to state whether the plaintiff was a licensee. Furthermore, the defendants' instruction stating that the plaintiff was a licensee and that the defendants did not owe her the duty of reasonable care was properly denied.

As stated above, when property is leased, the liability of the owner

for injuries occurring on the common areas is not dependent upon the injured person's status except to the extent that the person is lawfully on the premises. Since in the instant case the plaintiff was lawfully on the premises, the defendants owed her a duty of reasonable care regardless of whether she was an invitee or a licensee of the tenants.

■ Finally, we reject the defendants' argument that error was committed when the trial judge gave a jury instruction that was not supported by the evidence. Specifically, the defendants object to the use of the word "staircase" when the evidence presented at trial concerned one stair. We reject this argument. Courts are reluctant to reverse judgments for technical errors in instructions unless the jury has been misled or a party has been prejudiced. (*Duffy v. Cortesi* (1954), 2 Ill. 2d 511, 119 N.E.2d 241.) Assuming, arguendo, that the instruction was overly broad and unsubstantiated by the evidence, no prejudice has been shown to have occurred.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and WHITE, JJ., concur.