JON ALLEN, Plaintiff-Appellee, v. JOYCE DHUSE, Defendant-Appellant.

Second District    No. 81-445

Opinion filed March 12, 1982.

Puckett, Barnett, Larson, Mickey, Wilson and Ochsenschlager, of Aurora (Donald L. Puckett and John P. Duggan, of counsel), for appellant.

John M. Lamont, of Thomas and Lamont, of Aurora, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff, Jon Allen, recovered a judgment based upon a jury verdict for injuries incurred when he was struck by a vehicle driven by the defendant, Joyce Dhuse. Defendant appeals, contending that the verdict is against the manifest weight of the evidence, that verdicts should have been directed, that a motion for a mistrial was improperly denied, and that the court erred in striking the jury foreman's affidavit that attorney fees were added in the calculation of damages.

Plaintiff was struck by a car driven by the defendant on June 29, 1978, at about 12:20 a.m., at the intersection of Routes 31 and 34 in Kendall County. Route 31 runs generally north-south; Route 34 runs westerly, merging in a "T" intersection with Route 31. A bright white "edgeline" runs along the edge of the blacktop surface 2 feet out from a curb. The edgeline is 4 inches wide and made from plasticized ("thermoplastic") materials which were designed to reflect any source of light. The edgeline separates the paved portion of the roadway from the concrete shoulder or "gutter flag." The curb is 7 inches high and 7 inches wide. A series of

driveways separated by hard, grassy stretches runs along the curb west of Route 31.

The plaintiff testified that his Honda 750 Motorcycle, proceeding south on Route 31, went "dead." Ken Kozloski was driving a similar cycle behind him. Plaintiff pushed or coasted his bike to the roadside near the curb and set it on its kick stand. He said that the bike was just south of the light standard that went across the road on Route 31. Kozloski also parked his bike, facing south, in front of a driveway located about 10-15 feet south of plaintiff's bike. Plaintiff said that he parked his bike with the wheels up against the curb. Kozloski testified that plaintiff parked west of the white edgeline; he was not sure how close, but guessed, "closest to the curb as he could get." He said that Allen was standing about 6 inches to the east of his own cycle while working on it. Allen himself recalled that he had his feet on the concrete apron as "close as he could get" to his cycle. He, however, admitted that he was not paying particular attention to the position of his feet, as he was concentrating on fixing his bike. It also appeared that Kozloski had earlier stated in a deposition that Allen was east of the white line.

During the 5 or 10 seconds before impact Kozloski was walking back to his bike and turned to say something to Allen when he saw the head-lights of defendant's car. Both Kozloski and Adolfo Amador, another cyclist, who came upon the scene at about 10 minutes before the collision, testified that their motorcycles' rear parking lights were on, facing north, before the collision. According to Kozloski, the scene was illuminated by the stop lights at the intersection and by lights from cars coming west off the Oswego bridge.

There was also testimony that Allen saw a flash of lights and lost consciousness on impact. Both Kozloski and the defendant stated that Allen was lying face down straddling the edgeline with tire marks across his chest and left thigh. Kozloski said he saw defendant's car's headlights just before hearing the crash and picked himself up from the driveway "realizing we'd been hit." His knees were injured. There was evidence that Amador's bike sustained damage to its left side and front and back fender and that the other two bikes were completely wrecked.

A State trooper testified that he found all three bikes west of the curb with Allen's bike lying 18 feet south of a light standard, facing north, Kozloski's bike facing south about 25 feet south of Allen's bike and 7 or 8 feet west of the curb, and Amador's bike about 3 feet south of Kozloski's standing on the edgeline when he saw it.

The defendant testified that the night was dark but dry and clear; the road straight with view unobstructed; she had slowed to about 30 m.p.h. as she approached the traffic light at the intersection; her headlights were on low beam, and she could see the white edgeline. She said she was fully

within the right hand lane at all times. As she went through the intersection she heard a "thud" and pulled off the side of the road. She said she believed she hit one motorcycle. The damage to her bumper was slight, with some damage to the front right side.

The jury answered a special interrogatory finding plaintiff free of contributory negligence and found defendant guilty of negligence, awarding plaintiff $200,000 in damages.

Defendant argues that plaintiff, on these facts, was either guilty of contributory negligence as a matter of law, or that the jury's verdict and its negative answer to the special interrogatory were against the manifest weight of the evidence. We cannot agree.

■■ The jury could assess the credibility of the witnesses and resolve the conflict in the evidence and in so doing conclude that Allen's motorcycle's wheels were placed against the curb, that he was standing not more than 6 inches from the seat which extended only about 7½ inches past the imaginary line bisecting the bike lengthwise and that Allen was at the time of the collision west of the edgeline. The fact that little damage was done to the right front bumper of defendant's car does not prove that no part of Allen's bike was hit by the car or that Allen was in the roadway at the time. There was considerable evidence from which the jury could draw the inference that defendant's car did hit the plaintiff's bike and that she may have been off the roadway at the time. The bike was struck in the rear, there was considerable damage to it, and there was a total wreck of Kozloski's motorcycle which was west of Allen's; defendant admitted that she believed she hit one motorcycle, and there was evidence that Allen's motorcycle was beyond the shoulder after the accident.

Defendant also argues that plaintiff was contributorily negligent because he chose to work on his motorcycle in a hazardous area even though he could have worked as well in complete safety on one of the nearby driveways or grassy areas.

■■ It is generally true that where one chooses, for no particular reason, not to use a safer method available the plaintiff may be guilty of contributory negligence as a matter of law; but the crucial issue is whether the choice of the less safe course of action is reasonable under the circumstances. (*Connolly v. Melroy* (1978), 63 Ill. App. 3d 850, 853-54.) Thus, it has been held that standing in front of a car which one is repairing and asking another person to start the engine is not necessarily contributory negligence as a matter of law. (*Paul v. Carroll* (1973), 16 Ill. App. 3d 173, 176.) Here, the circumstances show that plaintiff's decision to choose what appears to have been the more dangerous alternative was not necessarily unreasonable. There is some evidence that plaintiff had reason to fear that his bike might tip over and fall on him if he worked on the somewhat inclined area west of the curb. It would appear that the traffic

was very light during the time he was working, and he had managed to work with no particular problems for nearly half an hour with cars passing. Further, there was evidence that the Kozloski and Amador motorcycles' tail lights were pointed north, that the area was further illuminated by lights from cars coming off the bridge and that the reflected light from plaintiff's motorcycle's reflector was visible, according to an expert's opinion, from 1500 to 2000 feet away. We conclude that there was sufficient evidence of the reasonableness of the plaintiff's choice of alternatives to go to the jury as an issue of fact, particularly since the jury could have found that the plaintiff and his motorcycle were both off the roadway entirely at the time plaintiff was struck.

■■ Defendant appears to argue that the plaintiff was guilty of contributory negligence as a matter of law because he was on the roadway in violation of a State statute (Ill. Rev. Stat. 1979, ch. 95½, par. 11—1301) which generally provides that a vehicle should not be left upon the roadway when it is practicable to stop, park or leave it off the roadway, except where it is disabled to the extent that it is impossible to avoid temporarily leaving the vehicle in such position. However, as we have noted, the jury could have found from the evidence that the plaintiff and his cycle were not on the roadway, that is, that portion of the highway used for vehicular traffic (Ill. Rev. Stat. 1979, ch. 95½, par. 1—179) and also therefore not within an intersection. (Ill. Rev. Stat. 1979, ch. 95½, par. 1—132.) Moreover, violation of the safety statute is not negligence *per se*, but evidence of negligence only, and may be rebutted by proof that the party acted reasonably under the circumstances despite the violation. *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 390.

■■ In her post-trial motion, defendant alleged that the jury improperly considered that plaintiff would probably incur attorney's fees and added that to its verdict. Attached to the motion was an affidavit by the jury foreman that "the jury believed that plaintiff Jon Allen would be forced to incur attorney's fees of approximately one-third of the amount awarded to him * * * [and] increased the damages by such an amount." The trial court granted plaintiff's motion to strike the affidavit and denied the motion for a new trial. We find no error in this ruling. It is clearly established that the use of affidavits of testimony to show the motive, the method or process by which a jury has reached its verdict is not permitted. (*Chalmers v. City of Chicago* (1982), 88 Ill. 2d 532, 537. See also *People v. Preston* (1979), 76 Ill. 2d 274, 288; *People v. Holmes* (1978), 69 Ill. 2d 507, 511-12.) The affidavit alleges no outside influence or extraneous information but merely makes conclusionary statements about the motive, method or process by which the jury reached its verdict as to damages and what the jury considered, believed and felt. Such conclu-

sions about the jurors' mental and decisional processes are plainly inadmissible.

The claimed error in the court's refusal to grant a mistrial arises from the following facts. The plaintiff attempted to introduce into evidence two estimates prepared by auto body shops after the accident of the damage done to defendant's car. The trial court, on defense counsel's objection, ruled the damage estimate inadmissible, reasoning that the photographs of the car in evidence adequately depicted the extent of the damage and that the price of the repairs to the car was not material to the case.

■■ Before his re-cross-examination of State Trooper Watson, who investigated the scene, plaintiff's attorney asked defendant's attorney for two exhibits "of the damage estimate." He then asked Watson questions while holding the damage estimate in front of him. The gist of the questions was whether or not the officer knew what a "header panel" or a "hinge plate" is with reference to defendant's automobile. The court sustained defense counsel's objection at this point and defendant moved for a mistrial, arguing that the questioning was an improper attempt to impeach Watson's testimony about the damage to defendant's car by using documents previously ruled inadmissible. Defendant urges that the questioning was prejudicial misconduct on a crucial issue which dealt with the relative location of Allen, his motorcycle, defendant's car, the edgeline and the roadway. We do not so conclude. It appears unlikely that the questions caused the jury to denigrate Watson's testimony as to the damage he saw or disregard the photographic evidence. Furthermore, Watson's testimony was only one of numerous factors the jury had to consider in deciding whether plaintiff was on the roadway; and whether plaintiff was in the roadway was only one of several factors involved in the question of plaintiff's contributory negligence. Whether to grant a new trial based on alleged misconduct by counsel was a matter for the discretion of the trial court, which will not be disturbed absent a clear abuse. *Ferenbach v. DeSyllas* (1977), 45 Ill. App. 3d 599, 602-03.

The judgment is affirmed.

Affirmed.

UNVERZAGT and VAN DEUSEN, JJ., concur.