DEANNA KOSTECKI, a Minor, by Donald Kostecki, Her Father and Next Friend, Plaintiff-Appellant, v. CHRIS PAVLIS *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 84—2427

Opinion filed January 15, 1986.

James Lee Daubach & Associates, of Chicago (Pamela Lynn Colon, of counsel), for appellant.

Jacobs, Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, Lawrence K. Rynning, John D. Daniels, and Lloyd E. Williams, Jr., of counsel), for appellees.

JUSTICE WHITE delivered the opinion of the court:

Donald Kostecki, as father and next friend of plaintiff Deanna Kostecki, instituted this action to recover damages for injuries sustained by Deanna. Deanna appeals from the summary judgment entered in favor of the defendants, Chris and Fay Pavlis.

The record reveals that on August 3, 1977, plaintiff, an 11-year-old minor, was injured in a building located at 6243 North Fairfield Avenue, Chicago. The building, which consists of three separate apartments, was owned and controlled by Chris and Fay Pavlis, who occupied the second floor with their two minor children, Tina and Patty. Louis Pavlis, Chris' brother, occupied the first floor with his wife and three minor children, Nicko, Dino and Marta. Plaintiff lived next door to defendants' property and played with all of the Pavlis children during the summer of 1977.

Plaintiff testified, in her deposition, that a few hours prior to the incident, she left her house to play outside with her brother, Donald Kostecki, and his friends. Subsequently, the Pavlis children joined them to play a game of chase. The children divided into two teams,

with one team hiding while the other team sought out and chased them. Plaintiff's team was hiding when the other team discovered them and began chasing them. Plaintiff's team then followed Dino Pavlis through the outer door into the foyer of defendants' property. At the end of the foyer was a second door which had 15 small glass panes. This door opened into a hallway which had two stairways, one leading to the upstairs apartments and the other leading to the basement.

Dino Pavlis opened the second door and proceeded into the basement. Donald Kostecki's friend held the second door open after Dino went through. Donald held the first door (the outside door) closed as plaintiff stood next to him. Donald then told plaintiff to follow Dino and the others through the second door and into the basement. According to plaintiff's deposition, as she ran quickly towards the second door, Donald's friend let go of that door. First the door was closing slowly toward her, but as plaintiff reached for the doorknob the door quickly slammed shut. Her hand met one of the glass panes of the door, causing her hand and arm to be forced through it. Plaintiff cut her arm and hand and suffered permanent partial disability, scarring and disfigurement.

In 1981, plaintiff filed this action against Chris and Louis Pavlis. Louis was dismissed with prejudice by an agreed order because he was not an owner of the building. Fay Pavlis, Chris' wife, as an owner of the property, filed her appearance. Defendants filed an answer to the complaint consisting of general denials. Depositions and affidavits were filed and are included in the record.

In February 1984, approximately six years after the incident, plaintiff hired Lester Kolom, a registered professional safety engineer, to examine the door. Mr. Kolom also reviewed the deposition transcript of Deanna and the affidavits of Chris and Louis Pavlis. Mr. Kolom concluded in his affidavit that the door was unreasonably dangerous in that the door was defectively maintained and in violation of several building codes.

On June 1, 1984, defendants filed a motion to strike Kolom's affidavit which the court denied. On June 22, 1984, defendants filed a motion for summary judgment. The trial judge granted the motion and entered judgment in favor of defendants on September 4, 1984. This appeal followed.

On appeal, plaintiff contends that the record presents a genuine issue of material fact as to whether the door was unreasonably dangerous and defective, thus precluding an award of summary judgment for the defendants. Specifically, plaintiff claims that (1) defendants

were negligent in that the door's closure mechanism was defectively maintained and (2) defendants' noncompliance with certain Chicago building ordinances establishes *prima facie* evidence of their negligence.

Summary judgment should be granted only where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005.) The court is to determine the existence or absence of a genuine issue of any material fact by strictly construing the affidavits, depositions, admissions, exhibits and pleadings in the case. *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457; *Bak v. Burlington Northern, Inc.* (1981), 93 Ill. App. 3d 269, 272, 417 N.E.2d 148.

Initially, we address defendants' claim that the door's closure mechanism was unreasonably dangerous because it was defectively maintained by defendants. Plaintiff bases this claim upon evidence that as she approached the door, it began closing slowly, but just as she reached for the doorknob, the door quickly slammed shut on her hand.

As a general rule, the duty of a landlord is as follows:

"Where only a portion of the premises is rented and the landlord retains control of other parts of the same such as stairways, passageways, or cellarways, or where he rents the premises to several tenants, retaining control over a part of the same for the common use of the several tenants, he has the duty of exercising reasonable care to keep the premises in a reasonably safe condition and he is liable for an injury from failure to perform such duty." (*Williams v. Alfred N. Koplin & Co.* (1983), 114 Ill. App. 3d 482, 485, 448 N.E.2d 1042.)

This duty is owed not only to the landlord's tenants, but also to those lawfully on the premises. *Hiller v. Harsh* (1981), 100 Ill. App. 3d 332, 426 N.E.2d 960.

In the case at bar, plaintiff sufficiently alleged that defendants maintained control over the common area in question and that plaintiff was legally on the premises as a guest of the Pavlis children. Defendant, however, contend that plaintiff failed to show that defendants breached their duty to maintain a reasonably safe door. In order to show that defendants breached that duty, it is necessary to establish that they had actual or constructive knowledge of the existence of the defective condition. (*Hiller v. Harsh* (1981), 100 Ill. App. 3d 332, 426 N.E.2d 960; *Sollars v. Blayney* (1961), 31 Ill. App. 2d 341, 176 N.E.2d 477.) Plaintiff pleaded no facts indicating that defendants

knew or had reason to know that the door closed as it did on the date in question. Moreover, plaintiff stated in her deposition that she had never seen the door close that way on the many occasions she played with the Pavlis children. Similarly, defendants stated that they on no occasion witnessed the door's closing in that fashion, either prior or subsequent to the incident; nor had they received any complaints to that respect. Under these circumstances, we cannot hold that defendants breached the duty of care owed to plaintiff. The landlord will not be liable for injuries that are not reasonably foreseeable. (*Baxter v. Illinois Police Federation* (1978), 63 Ill. App. 3d 819, 380 N.E.2d 832.) Indeed, it is unfortunate that plaintiff suffered such horrendous injuries as a result of the accident, but a landlord is not an absolute insurer for all injuries occurring on his premises. See *Bonamie v. Welsh* (1981), 95 Ill. App. 3d 349, 420 N.E.2d 243.

Plaintiff argues further that defendants' noncompliance with several ordinances of the Chicago Municipal Code establishes *prima facie* evidence of their negligence. (*Allen v. Dhuse* (1982), 104 Ill. App. 3d 806, 433 N.E.2d 356.) Plaintiff bases this contention on the findings of Kolom, the safety engineer who examined the door approximately six years after the occurrence in question. Kolom concluded in his deposition, *inter alia*, that the door was unreasonably dangerous and that defendants violated the following sections of the Chicago Municipal Code: (1) chapter 75, section 75—3, requiring all glazed doors to be glazed with safety glazing materials, and (2) chapter 67, section 67—9.1, requiring exit doors to swing in the direction of exit travel.

■ Initially, we note that the opinion of an expert that an object is unreasonably dangerous does not make it so. (*Bernstein v. Reforzo* (1977), 37 Md. App. 724, 379 A.2d 181.) An expert's opinion is no better than the facts on which it is based. *Bernstein v. Reforzo* (1977), 37 Md. App. 724, 379 A.2d 181.

■ We now address the question of whether the door was maintained in violation of chapter 75, section 75—3, as plaintiff contends. That section states:

"All glazed doors, and any glazed panel more than eighteen inches in width immediately adjacent to any door wherein the sill of such glazed panel is less than twenty-four inches above the floor shall be considered 'Hazardous Locations' and shall be glazed with safety glazing materials. Glazed doors shall include, among others, the following: sliding glass doors, storm doors, shower doors and bathtub enclosures." (Chicago Municipal Code 1974, ch. 75, par. 75—3.)

Defendants contend this ordinance is not applicable to the door in

question because that door is different from those specifically enumerated in the statute. We agree with this contention.

As a general rule, "courts apply the same rules of construction to municipal ordinances as they do to statutes." (*Village of Schaumburg v. Franberg* (1981), 99 Ill. App. 3d 1, 424 N.E.2d 1239.) Under the statutory construction doctrine of *ejusdem generis*, when general words, such as "including others" or "among others," follow the enumeration of several specific classes of things or persons, the general words will be construed as applying only to things of the same general class as those specifically enumerated. (*Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 328 N.E.2d 318.) We find no plausible reason why this doctrine should not be applied here, where a specific listing follows a general reference to glazed doors. The specific examples of glazed doors listed, all have a large, single panel of glass that constitutes an entire door or is as large as the outer perimeter of the door. However, the door in question is of wood frame construction with 15 small glass panes, arranged five panes horizontally and three panes vertically. Each pane's measurement is approximately seven by 11 inches.

Plaintiff contends in her brief, that "the legislature intended all doors containing glass to be glazed with safety glazing materials." We believe that if the legislature intended such requirements it would have included that provision in the ordinance. The legislature instead chose to use more restrictive terms, such as glazed doors and glazed panels of a certain width. A wood frame door containing several small glass panes is not a glazed door for purposes of chapter 75, section 75—3. Thus, we find the door in question was not maintained in violation of that ordinance.

■ Next we consider chapter 67, section 67—9.1, relating to the direction of swing of exit doors. That section provides:

"All doors required as exit doors shall swing in the direction of exit travel with the following exceptions:

(a) In Residential Units, doors serving one dwelling unit.

(b) In Residential, Business and Mercantile Units, outside exit doors serving not more than fifty persons.

(c) In Type 1 Schools, doors to corridors from classrooms having a capacity not exceeding fifty persons, provided that there are direct exits to the outside from such classrooms.

(d) In Business Units, doors to corridors from offices having a capacity not exceeding 100 persons.

(e) In all other occupancies, except Hazardous Use Units, doors to corridors from rooms having a capacity not exceeding

fifty persons. Doors, when open, shall not project into a public way." (Chicago Municipal Code 1978, ch. 67, par. 67—9.1.) The door in question swung opposite the direction of exit travel. Plaintiff claims that since defendants' door does not fall under one of the exceptions above, it is required to swing in the direction of exit travel. Defendants maintain that the door falls under exception (b) above which precludes from that requirement, *outside exit doors* of residential buildings serving not more than 50 persons.

It is undisputed that defendants' premises serve not more than 50 persons. However, it is not clear, based on the facts before us, whether defendants' door is an outside exit door for purposes of chapter 67. Even assuming, arguendo, that the door falls within the swing requirement, plaintiff has no claim based on this alleged noncompliance.

This court's function in statutory and ordinance interpretation is to ascertain the intention of the legislature and to give effect to it. (*Interlake, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 181, 447 N.E.2d 339.) The language of the Act is the best source for determining legislative intent. *People v. Rink* (1983), 97 Ill. 2d 533, 455 N.E.2d 64.

■ In reading chapter 67 in its entirety, we believe the legislature enacted section 67—9.1 as a fire safety ordinance. (Chicago Municipal Code 1974, ch. 67, par. 67—1 *et seq.*) Thus, the purpose of section 67—9.1 is to prescribe a more expedient means of evacuation for occupants of a building under emergency circumstances, typically fire. We therefore hold that section 67—9.1 was not enacted for purposes of *protecting* against the injury that occurred in the present case: injury caused to a child while playing near or around an exit door under nonemergency circumstances. Accordingly, plaintiff is precluded from asserting the alleged violation of section 67—9.1 as a basis for her claim of negligence.

■ Lastly, plaintiff argues that defendants were negligent because their doorknob, placed to the left of persons entering, was in a nonstandard location. Plaintiff claims that she would not have been injured had she not been required to reach across the glass panes to her left for the doorknob.

We find this argument to be without merit. It is obvious that a doorknob cannot always be to the person's right. If it is located to the right of persons entering, it will be to the left when exiting and vice versa. In light of this, an ordinary door would always be defective on one side or the other, depending on whether an individual is entering or exiting. The placement of defendants' doorknob creates no basis for liability.

Based on the foregoing, we find that the complaint here failed to plead facts upon which defendants' liability could be predicated. Accordingly, we affirm the trial court's summary judgment in favor of defendants.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.