2019 IL App (1st) 182003

No. 1-18-2003

Opinion filed on September 24, 2019.

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JAKE GRAHAM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2016 L 7741 |
| | ) | |
| LAKEVIEW PANTRY and | ) | |
| THE CATHOLIC BISHOP OF CHICAGO, | ) | The Honorable |
| | ) | William E. Gomolinski, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Justices Pucinski and Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1    This case stems from Jake Graham's (plaintiff) fall from the threshold of a doorway in St. Alphonsus Hall, which ultimately resulted in lacerations and scarring to his face. Plaintiff visited the food pantry in Chicago's Lakeview neighborhood (Lakeview Pantry), located inside St. Alphonsus, which is owned and operated by the Catholic Bishop of Chicago (Archdiocese), and was exiting the premises when he fell. Due to his injury, plaintiff filed a premises liability action against Lakeview Pantry and the Archdiocese, alleging, in the main, that they negligently maintained the premises where the injury occurred and breached their duty of reasonable care to

plaintiff as an invitee on the premises. Lakeview Pantry and the Archdiocese filed separate motions for summary judgment under section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2016)), based on the deposition testimony from plaintiff and employees from both Lakeview Pantry and the Archdiocese, as well as the property's lease agreement. The trial court granted the summary judgment motions of both Lakeview Pantry and the Archdiocese. We affirm.

¶ 2                                 I. BACKGROUND

¶ 3                     A. Plaintiff's Complaint and the Testimony

¶ 4      In the early afternoon on January 17, 2015, plaintiff entered St. Alphonsus, 1414 West Oakdale Avenue in Chicago, through the entrance/exit door for Lakeview Pantry to accept donated food items. Plaintiff's deposition testimony revealed that, on the day of the incident, the weather was unusually warm for a January morning and there was no snow or ice by the door or nearby asphalt. Plaintiff testified that, on arriving to St. Alphonsus, he had no problem opening the door and stepping up about 10 or 11 inches over the threshold through the doorway. After entering, plaintiff walked across a landing and down seven stairs to the basement, which houses the parish school gymnasium, a concession stand, and the food pantry. The process of waiting for and accepting the food took between 30 to 45 minutes, and there were about 100 other people collecting food. Plaintiff then requested and received a "banana box," weighing about 20 pounds, to carry his food items. Plaintiff held the box with both hands in front of his belly and walked back up the basement stairs. In his testimony, he explained that the box protruded about a foot-and-a-half in front of him and obstructed his vision. The record reveals that nobody witnessed these events prior to plaintiff's fall.

¶ 5    As plaintiff reached the exit door of the church, a Lakeview Pantry volunteer, Daniel Rowell, held the door open and began speaking to plaintiff while he stepped out of the hall. According to plaintiff, this conversation distracted him, causing him to look at the volunteer rather than at the ground. He then unexpectedly encountered a drop while stepping over the threshold, lost his balance, and fell to the left. Thus, although Rowell stood on the asphalt outside the doorway and plaintiff had previously stepped up over this same threshold earlier, plaintiff claimed he was unaware of any drop-off during his exit. Rather, he mistakenly believed the exit door and asphalt were on the same level. As he fell, plaintiff dropped his food box, tried to catch himself, took a few steps, then hit a one-foot drop-off, where the asphalt turned into a landscape trench, and he went face-first into a metal fence, suffering head injuries. He noted there were no warnings about any change in elevation.

¶ 6    Contrarily, Rowell saw plaintiff lose his balance after the first step and take a few steps to the left, while still holding the box of food as he fell. Rowell, who worked at that location previously, had not seen other clients fall at the entrance/exit, although he had seen "a number of people carrying boxes over the threshold through that door a number of times." Rowell, himself, had never tripped while going over the threshold. Lakeview Pantry coordinator Carrie McCormack similarly testified that after working at the pantry some 15 years, there were never any incidents involving injury from the exit door. Nonetheless, she acknowledged that after plaintiff's fall she was "given" a sign stating, "please step down," which a volunteer taped to the exit door.

¶ 7    After his fall, plaintiff filed the present complaint alleging that the head injuries he sustained from his fall were caused by the negligence of defendants. In particular, plaintiff alleged that both Lakeview Pantry and the Archdiocese operated, managed, maintained, and

controlled the premises, and they had a duty to maintain those premises in a reasonably safe condition for persons lawfully on the premises. Specifically, plaintiff alleged that (1) defendants breached their duty of care when they negligently operated, managed, maintained, and controlled the premises in a manner that was unreasonably dangerous; (2) they allowed a dangerous condition to exist because there was no handrail at the exit door; (3) they allowed a tripping hazard to exist in the drop-off threshold from the exit door; and (4) they failed to properly warn entrants of the dangerous condition. As a result of the defendants' actions or omissions, plaintiff asserted that he suffered injuries to his head.

¶ 8                          B. Summary Judgment and Responsive Pleadings

¶ 9     Lakeview Pantry and the Archdiocese filed separate motions for summary judgment, attaching the aforementioned depositions and the property lease contract. Lakeview Pantry first argued that it was entitled to judgment as a matter of law because it owed no legal duty to maintain the area where plaintiff was injured. In so arguing, Lakeview Pantry attached its lease agreement with the Archdiocese, which showed that the Archdiocese, and not Lakeview Pantry, controlled the premises where plaintiff fell. In particular, the lease stated that Lakeview Pantry rented "the Pantry area of the Hall basement" and held a "non-exclusive right and license" over the "Access Areas," including the means of ingress/egress on the property, exits, stairways, and hallways leading to the premises. Lakeview Pantry's use of "access areas" was ultimately subject to the rules and regulations of the Archdiocese. Lakeview Pantry noted the deposition testimony of several Archdiocese employees corroborated its interpretation of the lease, as they verified that it was the church maintenance department and not Lakeview Pantry that maintained the foundation of the building, asphalt landing, iron fence, and flower bed where plaintiff was injured.

¶ 10    In the alternative, Lakeview Pantry argued that it was not liable to plaintiff because the threshold was an open and obvious condition and was discovered by plaintiff when he first entered St. Alphonsus. Lakeview Pantry argued that, as a result, it was not reasonably foreseeable that an invitee would be injured while on its premises.

¶ 11    In response, plaintiff argued that in spite of the lease language, the physical injury was foreseeable given the step and that there was only one means of ingress/egress to the pantry. Plaintiff further argued that he was distracted by the box of food he was carrying and by Rowell's presence, which precluded him from taking notice of the step, despite the obvious fact that he did not have any problem walking over the step through the door during his entrance.

¶ 12    The Archdiocese, on the other hand, argued that plaintiff's claim against it was time-barred by the Illinois statute of repose for construction (735 ILCS 5/13-214(b) (West 2016)). That statute precludes a tort action "brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission." *Id.* It was enacted to protect anyone who engages in those enumerated construction-related activities from the onerous task of defending against stale claims. *Wright v. Board of Education of the City of Chicago*, 335 Ill. App. 3d 948, 955 (2002). The Archdiocese argued that the foundation of the entryway where plaintiff fell had been constructed in 1911, with the asphalt pavement just outside the door being added in 2002 and the current door/threshold in 2003. In support, the Archdiocese pointed to the deposition testimony, stating the same, of Robert Kilkenny, the facilities engineer at St. Alphonsus. In his deposition, Kilkenny added that no other changes had been rendered to that area since then, and there had been no prior accidents or falls involving the area in question. As 10 years had passed between

the construction and plaintiff's complaint, the Archdiocese argued plaintiff's claim was time-barred.

¶ 13 In response to the Archdiocese, plaintiff did not dispute that the improvements to the threshold occurred in 2002 and 2003, but instead argued that the Archdiocese owed an ongoing duty of care to operate and maintain the premises in a safe manner. Plaintiff further argued the testimony of Kilkenny was insufficient to establish that the Archdiocese satisfied the enumerated activities under the construction statute.

¶ 14 The Archdiocese countered these arguments by offering the affidavit of Reverend James Hurlbert, who served at St. Alphonsus, and averred that the Archdiocese was involved in the design, planning, supervising, and observing of the 2002 asphalt job and 2003 door installation, while also serving as the construction manager for both jobs.

¶ 15                                    C. Trial Court Judgment

¶ 16 After the parties filed responsive pleadings, the trial court held a hearing. The court issued a written order stating that "for the reasons stated in open court," it was granting the motions of summary judgment in favor of both Lakeview Pantry and the Archdiocese. Notably, plaintiff has not included in the record on appeal the report of proceedings containing the court's oral pronouncements. Following the court's written order, plaintiff filed a motion to reconsider, which was denied. Plaintiff appealed.

¶ 17                                    II. ANALYSIS

¶ 18 Summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits on file reveal that there is no genuine issue of material fact when viewed in the light most favorable to the nonmovant and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004). If the

party moving for summary judgment supplies uncontradicted facts that would warrant judgment in its favor as a matter of law, the opposing party cannot rely on its pleadings to create a genuine issue of material fact. *Abrams*, 211 Ill. 2d at 257. We review *de novo* a grant of summary judgment. *Id.* at 258.

¶ 19                                    A. Duty Analysis for Lakeview Pantry

¶ 20    When a premises liability action is filed against a defendant, plaintiff must establish a duty of care owed by the defendant, a breach of that duty, and an injury proximately caused by a negligent violation that duty. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). Whether a duty exists is a question of law for the court to decide. *Id.* On the other hand, the issues of whether a defendant breached that duty and whether the breach was the proximate cause of the plaintiff's injury are generally factual matters for the jury to decide. *Id.*

¶ 21    The existence of duty also involves considerations of public policy informed by four factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Id.* at 436-37. Based on these four factors, the court determines whether the plaintiff and defendant stood in such a "relationship" to each other that the law imposed upon the defendant an obligation of reasonable conduct. *Id.* at 436.

¶ 22    A possessor of land is liable for physical harm caused to invitees by a condition on the land if he knows or should know that it involves an unreasonable risk of harm to invitees, he should expect that invitees would not discover/realize the danger or protect themselves against it, and he fails to exercise reasonable care to protect against the danger. Restatement (Second) of Torts § 343 (1965). Plaintiff argues that, as an invitee to Lakeview Pantry, Lakeview Pantry is liable for the physical harm caused to him by the allegedly dangerous condition on the land.

Relying on the four factors above and his status as an invitee, plaintiff argues that the law imposes a duty on Lakeview Pantry to ensure a safe means of ingress/egress over the allegedly dangerous threshold.

¶ 23    In response, Lakeview Pantry argues that its duty of care to invitees does not extend to property that it does not exclusively control. Lakeview Pantry thus maintains that we need not even consider the four-factor duty analysis. In support, Lakeview Pantry relies on *Hougan v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2013 IL App (2d) 130270, where a car jumped the curb in a shopping center, hitting a store patron on the sidewalk outside the lessee's store. In affirming summary judgment for defendant, this court found the lease contract, which gave the landlord "sole discretion" over common areas outside the leased premises, including sidewalks, was relevant to determining whether a duty existed in the first place. *Id.* ¶¶ 8, 40. Given the lease terms and because the area where the injured plaintiff was standing was under the exclusive control of the landlord property owner, *Hougan* held that the lessee store did not owe a duty of care to the plaintiff, even though the risk of injury from a car was foreseeable. See also *Murphy v. Illinois State Trust Co.*, 375 Ill. 310, 313-14 (1940) ("The rule is that where only a portion of the premises is rented and the landlord retains control of other parts of the same such as stairways, passageways, or cellarways *** [the landlord] has the duty of exercising reasonable care to keep the premises in a reasonably safe condition and [the landlord] is liable for an injury which results to persons, lawfully in such place, from failure to perform such duty."); *St. Phillips v. O'Donnell*, 137 Ill. App. 3d 639, 644 (1985) (concluding that, normally, where only a portion of the premises is rented and the landlord retains control of other parts of the premises for the common use of the tenants, the landlord has the duty to exercise reasonable care); *Hiller v. Harsh*, 100 Ill. App. 3d 332, 336 (1981) (holding that the defendant landlord owed the plaintiff a

duty of reasonable care to keep common areas like the stairway in a reasonably safe condition when the plaintiff was lawfully on the premises). *Hougan* thus held that the lessee store was immune from the premises liability action. 2013 IL App (2d) 130270, ¶ 44.

¶ 24     As in *Hougan*, the lease terms in this case dictate liability. As set forth, plaintiff's injury did not occur inside the food pantry, but rather in the "access area" by the door and threshold in St. Alphonsus. "Access areas" are defined in the lease as the basement bathrooms, ingress and egress, exits, hallways, and stairways. The lease states that the use of access areas is "subject to such rules and regulations as [the Archdiocese] *** may impose" and provides that it is the Archdiocese that can change "the nature of the Access Areas" and make or remove installations there. Furthermore, section 1(b) of the lease gives Lakeview Pantry only a limited, "non-exclusive right and license" to the access areas. The lease also prohibits Lakeview Pantry, absent the written permission of the Archdiocese, to post any signs by the access areas. Similar to *Hougan*, where, as here, the landlord retains control over the common access areas, it is the landlord's duty to maintain those common areas in a reasonably safe condition. See *id.* Thus, even if plaintiff's injury at the door threshold was reasonably foreseeable, Lakeview Pantry owed no duty as a renter where it did not retain exclusive control over that common area. See *id.* ¶¶ 38, 44; *St. Phillips*, 137 Ill. App. 3d at 644 ("[T]he landlord has the duty to exercise reasonable care to keep those premises in a reasonably safe condition and is liable for a foreseeable injury from a failure to perform such duty.").

¶ 25     Plaintiff nonetheless argues that Lakeview Pantry can still be liable because it actually assumed usage and control over the means of ingress/egress to the food pantry. Plaintiff asserts that only Lakeview Pantry volunteers and invitees used the entry/exit door. Plaintiff also points to Lakeview Pantry coordinator McCormack's testimony that Lakeview Pantry salted the

sidewalk leading to the door where he was injured and argues that this illustrates Lakeview Pantry intended to assume control of the common areas.

¶ 26    This argument fails for several reasons, primarily because plaintiff has cited no legal authority to support his claim that such practices can trump the lease terms, even though he is required to do so by Illinois Supreme Court Rule 341(h)(7) (eff. Nov. 1, 2017). This court is not a repository for an appellant to foist the burden of argument and research. See *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010). By failing to develop his argument or cite any authority in support, plaintiff has forfeited his argument. See *id.*; Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017).

¶ 27    Forfeiture aside, both the law and record contradict his claim. We find *Godee v. Illinois Youth Soccer Ass'n*, 327 Ill. App. 3d 695 (2002), instructive. There, a parent fell in a drainage ditch on a school's field while walking to the parking lot after her child's soccer game. The plaintiff sued the nonprofit soccer association and alleged that it operated and controlled the school's field where her injuries occurred. *Id.* at 696. The appellate court affirmed summary judgment for the nonprofit association because it did not maintain the property or physically enclose the premises, and therefore, it did not possess or control the property where the plaintiff's injury occurred. *Id.* at 699; see also *Caracci v. Patel*, 2015 IL App (1st) 133897, ¶ 25 (affirming summary judgment for a defendant strip mall owner when there was no evidence of affirmative conduct that defendant attempted to appropriate and control the roadway where plaintiff's injury occurred).

¶ 28    Similarly, Lakeview Pantry did not maintain or physically enclose the common areas to such an extent that its practices could trump the lease terms. The deposition testimony of the parish and Lakeview Pantry staff established that the pantry was located in a shared space in the

basement hall, along with a parish school gym and concession stand. Although the entry/exit was primarily used by Lakeview Pantry volunteers and clients, and another door was used for parish purposes, the entry/exit at issue led to the shared space and the maintenance director, Kilkenny, routinely utilized it. At one point, the parish children used the entry/exit at issue when flooding occurred. Lakeview Pantry had to submit a work order to the Archdiocese maintenance staff before any changes or repairs could be made. In short, this was a communal space ultimately owned and maintained by the Archdiocese, and nothing in the record shows that Lakeview Pantry affirmatively excluded others from accessing the door to St. Alphonsus. Rather, the record suggests that any parish member had unfettered access to the entire basement through this door. While McCormack's deposition testimony established that Lakeview Pantry would sometimes sweep the communal doorway as a "courtesy" and would only shovel or salt the sidewalk if there was a miscommunication with the Archdiocese's snow plow company or after the maintenance workers had left, any such acts of maintenance are simply insufficient to show appropriation. See *Gilmore v. Powers*, 403 Ill. App. 3d 930, 935 (2010).

¶ 29     In reaching this conclusion, we also reject plaintiff's contention that Lakeview Pantry's act of placing a warning sign on the door after plaintiff's fall creates a genuine issue of material fact regarding exclusive ownership and control over the access areas. Plaintiff cites *Herzog v. Lexington Township*, 167 Ill. 2d 288, 300-01 (1995), as proof that subsequent remedial measures may sometimes be used to show ownership or control of property. His reliance on *Herzog* is misplaced, however, because remedial actions may only be used to show control and maintenance over property when there is no clear and unambiguous lease, specifying repairs and maintenance of the property. See *Coshenet v. Holub*, 80 Ill. App. 3d 430, 431-32 (1980) (concluding that where entire premises have a clear and unambiguous lease specifying which

parties shall make repairs, evidence may not be admitted to show control over property). In this case, Lakeview Pantry's lease's section 10(a) clearly states that the landlord is responsible for all structural repairs, supporting Lakeview Pantry's proposition that it did not control the area where plaintiff fell.

¶ 30    Furthermore, in weighing the consequences of placing the burden on Lakeview Pantry as the renter and the magnitude of that burden, we find the Archdiocese as landlord is best able to prevent harm to others in the common area because it retains the right to control the area. See *St. Phillips*, 137 Ill. App. 3d at 644.

¶ 31    For the reasons elucidated above, Lakeview Pantry did not have a duty of care, since plaintiff's injury occurred in a shared, common area of the property maintained and controlled by the Archdiocese as the landlord. There is no legal requirement for Lakeview Pantry to exercise control over an area when its lease contract retains that possession and control for the property owner. Having reached this conclusion, we need not consider Lakeview Pantry's alternative argument that the condition of the threshold was open and obvious such that it precluded liability.

¶ 32         B.    Construction    Statute    of    Repose    Analysis    for    the    Archdiocese

¶ 33    Plaintiff next argues that the trial court erred in granting summary judgment to the Archdiocese based on the statute of repose for construction. See *Wright*, 335 Ill. App. 3d at 955. As stated, the express purpose of the statute is to guard against stale claims. *Id.* The construction statute applies whenever (1) the product at issue is an improvement to real property and (2) the defendant's activities fall within those listed in the statute. *Ryan v. Commonwealth Edison Co.*, 381 Ill. App. 3d 877, 882 (2008).

¶ 34    Plaintiff, apparently having conceded that the construction at issue constituted an improvement, now argues that the statute does not apply because the Archdiocese did not participate in the "design, planning, supervision, observation or management of construction, or construction of an improvement to real property." See 735 ILCS 5/13-214(b) (West 2016). The Archdiocese responds that the record contradicts plaintiff's contention. We agree.

¶ 35    Evidence presented by the Archdiocese showed that the door and threshold were constructed and improved upon in 1911, 2002, and 2003. Kilkenny, the parish facilities engineer, testified that in 2002, the Archdiocese contracted with a company to pour asphalt between the door and the landscaping bed. In his deposition, he reviewed a spreadsheet indicating that the check number and date he believed a check was issued to a contracting company. In 2003, Kilkenny himself signed off on the construction proposal to employ another contractor to retrofit a new door into St. Alphonsus pursuant to the Archdiocese's request. He explained that the Archdiocese chose to retrofit a new door for the existing door frame, rather than rebuild the entrance. Reverend Hurlburt's affidavit supports Kilkenny's testimony that the Archdiocese was involved in these specific construction activities in 2002 and 2003. His affidavit states that the Archdiocese was involved in the design, planning, supervision, observation, and management of the construction activities in 2002 and 2003. In plaintiff's appeal, plaintiff claims that "Throughout the course of fact discovery, not one disclosed witness testified that [the Archdiocese] played a single role in the design, planning, supervision, observation or management of the improvements to its property ***." However, the record directly contradicts plaintiff's allegation, and we agree the construction statute of repose applies to the Archdiocese, barring plaintiff's claim against it.

¶ 36    Plaintiff nonetheless argues that it was the unfilled landscaping trench that proximately caused his injury, a fact he claims the trial court "ignored" in its ruling. Plaintiff maintains that the Archdiocese "failed to properly maintain this one foot drop off area," which was an unsafe condition created from "the bushes [that] died off or were removed." He points to the deposition of the parish director of operations, John Schuch, who testified that at some point there were bushes in the drop-off area, whether before or after the fall, implied that plaintiff could have steadied himself on the bushes, the bushes would have stopped his fall, or he would have suffered only minor scratches. Although his reasoning is not entirely clear, plaintiff is surely trying to bypass the construction statute of repose by arguing that the trench does not constitute an "improvement" or that the Archdiocese had an ongoing duty to maintain the asphalt drop-off that created the trench. See, *e.g.*, *Ryan*, 381 Ill. App. 3d at 882 (holding that, notwithstanding any defects in design, planning, supervision, observation, or management, a party still may be held liable for failure to maintain its equipment, so the statute of repose does not apply).

¶ 37    At the outset, we note that plaintiff's proximate cause argument fails because he neglected to raise this specific argument in response to the motion for summary judgment, instead waiting until his motion to reconsider. However, it is well established that arguments raised for the first time in a motion for reconsideration in the circuit court are forfeited on appeal. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36 (such motions are intended to identify newly discovered evidence that was not available at the time of the original hearing, changes in existing law, or errors in the circuit court's application of the law). In addition, the common law record does not disclose that plaintiff raised this argument before the court, and nowhere in his brief does plaintiff point to the record demonstrating he set forth the argument. See also Ill. S. Ct. R. 341(h)(6), (7) (eff. Nov. 1, 2017); *Hall v. Naper Gold Hospitality LLC*,

2012 IL App (2d) 111151, ¶ 12 (requiring reference to the pages of the record relied on). Furthermore, plaintiff did not include the report of proceedings on appeal, even though plaintiff maintains the burden of providing a sufficiently complete record for us to review his claims. *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 655 (2007). Thus, although we have *de novo* review at this stage, we cannot discern whether the trial court "ignored" this argument, given that we have no evidence plaintiff even raised the matter orally below. *In re Marriage of Cepek*, 230 Ill. App. 3d 1045, 1046 (1992) (where the record is incomplete, we presume the trial court's judgment was correct). Plaintiff therefore has forfeited his proximate cause argument.

¶ 38    Putting forfeiture aside while assuming a court could impose on the Archdiocese a legal duty to plant bushes in an area where no one would be expected to walk, plaintiff's claim still fails because it is based on mere surmise or conjecture. While proximate cause is generally an issue of material fact to be determined by the jury, proximate cause may be determined as a matter of law where the facts establish plaintiff would never be entitled to recover. *Abrams*, 211 Ill. 2d at 257-58. To establish proximate cause, the plaintiff must affirmatively and positively show that the defendant's alleged negligence caused the injuries for which the plaintiff is trying to recover. *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 34. Proximate cause may also be established by circumstantial evidence that, in light of ordinary experience, reasonably suggests that the defendant's negligence produced the plaintiff's injury. *Canzoneri v. Village of Franklin Park*, 161 Ill. App. 3d 33, 41 (1987). However, a fact cannot be established through circumstantial evidence unless the circumstances are so related to each other that it is the only probable, and not merely possible, conclusion that may be drawn. *Berke*, 2016 IL App (1st) 150397, ¶ 35. When proven facts appear to demonstrate that the nonexistence of the fact to be

inferred appears to be just as probable as its existence, the conclusion is a matter of speculation, conjecture, and guess, and the trier of fact will not be permitted to make that inference. *Id.*

¶ 39　We find *Berke* particularly instructive on the matter of whether plaintiff attempted to create a material issue of fact through guess, speculation, and conjecture. In *Berke*, a guest at an apartment building brought a premises liability claim against the building owner and its management company after sustaining injuries from a fall. The guest specifically argued that the threshold was unreasonably high and that the door closed too quickly, proximately causing him to trip and fall down the stairs. This court determined it was equally likely that a jury could infer that the guest fell due to reasons unrelated to the condition of the premises and concluded that even if the threshold created a dangerous condition, this was insufficient to establish a causal connection between the defendant's negligence and the guest's injuries. *Berke* held summary judgment was proper because the guest's conclusion that the height of the threshold proximately caused his fall was nothing more than a *possible* (not probable) conclusion. *Id* ¶ 41; see also *Strutz v. Vicere*, 389 Ill. App. 3d 676, 681 (2009) (finding summary judgment proper when the plaintiff's statement that he fell down over the stairway railing did not explain the cause of the fall or create a genuine issue of material fact); *Kellman v. Twin Orchard Country Club*, 202 Ill. App. 3d 968, 975 (1990) (affirming summary judgment when the plaintiff's testimony only gave the possibility of a cause and was not enough to establish a causal relationship between the alleged negligence and plaintiff's injuries).

¶ 40　In the case *sub judice*, plaintiff relies on his own testimony that his fall was complete at the open landscaping trench in an attempt to create a genuine issue of material fact that it was the landscaping trench, and not the threshold, that caused his injury. In his deposition, plaintiff stated: "The first step down started me falling forward. When my foot hit the threshold that's

when I went all the way down face first into the fence." However, plaintiff has presented only conjecture suggesting that a landscape trench filled with bushes would have prevented this injury or stopped his fall.[1] Even accepting all his statements as true, plaintiff has only established that the allegedly dangerous landscaping trench *possibly* caused or contributed to his injury, and this is insufficient to establish proximate cause. See *Billman v. Frenzel Construction Co.*, 262 Ill. App. 3d 681, 687 (1993) (the existence of a fact cannot be inferred when a contrary fact could be inferred with equal certainty from the same evidence). As speculation would be required to determine the issue, causation cannot be a triable issue of fact in this case. Therefore, plaintiff's proximate cause argument fails.

¶ 41　For all the reasons stated above, plaintiff's claim against the Archdiocese is time-barred by the Illinois construction statute of repose.

¶ 42　　　　　　　　　　　III. CONCLUSION

¶ 43　Based on the foregoing, we affirm the judgment of the trial court in favor of Lakeview Pantry and the Archdiocese.

¶ 44　Affirmed.

---

[1]Plaintiff also submitted an affidavit by his expert witness, Daniel Robison. Lakeview Pantry now argues we should disregard the affidavit as improper and lacking a foundation, just as the trial court did. Plaintiff has failed to respond to this argument in his reply brief. Given his lack of response and the incomplete record, we need not consider the affidavit further. See Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) (points not argued are forfeited). We note only that the affidavit does not necessarily help plaintiff's proximate cause argument, as Robison identified multiple methods to cure the means of ingress/egress into St. Alphonsus, including warning signs regarding the threshold, removal of a ramp, handrails for the step down, and creating a level landing. Notably, Robison's affidavit referred to a "low area by the ramp at the fence opening" that should have been corrected, but he does not state whether this area should have been filled with bushes or flattened completely. Furthermore, he identifies the cause of plaintiff's fall as the uneven threshold.

**No. 1-18-2003**

| | |
|---|---|
| **Cite as:** | *Graham v. Lakeview Pantry*, 2019 IL App (1st) 182003 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2016-L-7741; the Hon. William E. Gomolinski, Judge, presiding. |
| **Attorneys for Appellant:** | Erron H. Fisher, of Fisher & LaMonica, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Robert M. Burke Jr. and Michael Spanel, of Heineke & Burke, LLC, of Chicago, for appellee Lakeview Pantry.<br><br>Frank N. DeBoni, of Nielsen, Zehe & Antas, P.C., of Chicago, for other appellee. |