LEONARD WILSON, Plaintiff-Appellee, *v.* REEVES RED-E-MIX CONCRETE PRODUCTS, Defendant-Appellant.

(No. 74-371;

Fifth District—June 11, 1975.

Wagner, Bertrand, Bauman & Schmieder, of Belleville (Bernard H. Bertrand, of counsel), for appellant.

Callis, Schooley, Filcoff and Hartman, of Granite City (William W. Schooley, of counsel), for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Madison County entered on a jury verdict for plaintiff-appellee against defendant-appellant and awarding plaintiff $40,000 for injuries suffered in an accident involving a "concrete-mix" truck owned by defendant.

Walter Schmidtke and James Rider were laying a concrete slab for a basketball court on Rider's property. Defendant had agreed to sell the concrete. Plaintiff had volunteered to help lay the concrete and arrived while William Butler, defendant's driver, was standing somewhere beside the truck facing Rider's house. Rider's wife came to the back door and asked plaintiff if he wanted something to eat or drink. Plaintiff apparently advanced toward the rear of the truck near the Rider house. At the same time, Butler was preparing to lower the chute on the rear of the truck to unload the concrete. The chute is hinged in the middle and rests against the rear of the truck at an angle when traveling or not in use. In order to unload concrete, the operator releases a pin holding the chute in place, thereby allowing it to swing down and over until it is almost in the center of the back of the truck. The lower section, usually resting on the top of the main section, is then pulled down forming a continuous trough.

In response to Mrs. Rider's question about food, plaintiff standing now somewhere at the rear of the truck with his back to it, gestured in a way that raised and extended his right arm. As Butler, the driver, lowered the chute, plaintiff's right hand was caught in the space where the upper and lower parts of the chute join. Plaintiff's hand was severely injured.

Plaintiff's complaint alleged that defendant's agent, Butler, was negligent in failing to keep a proper lookout, failing to warn plaintiff of the hazard, and pushing the chute toward plaintiff causing the injury. The first trial of this lawsuit ended in a hung jury and a mistrial was declared. On retrial, the jury found for the plaintiff and awarded plaintiff $40,000.

This appeal is concerned solely with a controversy surrounding one of plaintiff's exhibits. In the first trial, plaintiff introduced a picture showing a rear view of the concrete truck. During cross-examination, plaintiff was asked to mark the picture with a circle to indicate his position when the accident occurred. Another witness, Walter Schmidtke, was asked to mark plaintiff's position with a "W." That mark appears more toward the center of the truck and slightly closer to it than the mark made by the plaintiff. After the mistrial was declared in the first lawsuit, the exhibits were entrusted to the care of the Circuit Clerk's office.

On the day the second trial was to begin, the exhibits from the first trial could not be located. The trial court noted on the record the extensive search that had been made to find the pictures and ordered the trial to proceed. Defendant objected strenuously and asked for a further continuance to search for the exhibits. The motion was denied. Plaintiff provided exact copies of the pictures used at the first trial, taken from the same negative. One of the exhibits introduced at the second trial was the picture showing a rear view of the concrete truck. This exhibit did not, of course, reflect the markings made by the witnesses at the first trial. During the second trial, plaintiff was asked to mark the exhibit with a "W" his position when the accident occurred. His mark appears in the same general area of the picture but certain differences are evident. Plaintiff's mark at the second trial is in a place roughly between the circle made by him at the first trial and the "W" made then by Schmidtke. In comparison to the circle, the second "W" is closer to the truck and more toward the center where the chute unfolds. At the first trial, plaintiff testified that he was 4 or 5 feet away from the truck when the accident occurred. At the second trial, he testified he was three or four feet away. Counsel had the transcript of the testimony from the first trial and attempted to impeach plaintiff with the altered distances. Plaintiff admitted that he could have been 4 or 5 feet away, as testified to at the first trial. Defendant moved for a mistrial on the ground of the different markings

on the picture but the motion was denied. After completion of the trial, the original exhibits were found. In his post-trial motion, defendant contended that the court erred in failing to grant the continuance and failure to declare a mistrial. Defendant subsequently amended the post-trial motion, praying for a new trial on the basis of the recovery of the lost exhibits. The motions were denied. Both exhibits have been made a part of the record on appeal and we have been able to examine them.

Defendant-appellant urges that the trial court abused its discretion in refusing to grant a continuance. No formal motion was actually made. Defendant merely objected when the court stated that the trial would proceed. The court ruled that a thorough search had been made for the evidence and that its absence at trial could not prejudice the parties because of the presence of a verbatim transcript of the testimony taken at the first trial. When one of the new exhibits was offered for admission, however, no objection was entered. At that point the exhibit had not been marked. During plaintiff's testimony, and after he had marked the new exhibit, defendant moved for a mistrial because of the change plaintiff had made in the representation of his position before the accident. Defendant asked for a new trial, but all motions were denied. Although defendant cites the denial of the motion for mistrial and post-trial motion as error, the issue hinges on the initial denial of the continuances and the importance of the evidence.

Supreme Court Rule 231 (Ill. Rev. Stat. 1973, ch. 110A, par. 231) prescribes the grounds for and the procedure by which the court may grant a continuance. Subparagraph (a) provides, in relevant part, that the party asking for continuance on the basis of the absence of material evidence shall file an affidavit showing due diligence in attempting to locate the evidence, of what the evidence consists, and that the evidence can be procured if further time were granted. Plaintiff here notes that defendant did not file such an affidavit. But this does not appear to be a controlling factor in this case. Defendant stated to the court what evidence was missing and there was no dispute as to its nature. There was no indication that defendant could have procured the exhibits through any diligence or not procure it through any lack thereof. Defendant stated to the court that more time should be expended looking for the picture but, of course, could not guarantee its reappearance. Thus, we do not believe that the lack of an affidavit by defendant affects the facts of this case.

It is well settled that the decision to grant or refuse a continuance is within the sound discretion of the trial court. Its decision will not be overturned unless the record discloses that the court abused that discretion arbitrarily. Subparagraph (b) of Rule 231 (Ill. Rev. Stat. 1973,

ch. 110A, par. 231(b)) requires the court to deny a continuance sought for absent evidence where the court is "satisfied" that the evidence is immaterial. The court can, however, grant the continuance if necessary "for the furtherance of justice."

In the instant case, it is impossible for us to see how defendant was in any way prejudiced by the lack of the original exhibit. There is really no dispute about the operative facts of the accident and defendant does not challenge the sufficiency of the evidence to support the verdict. There is no doubt that plaintiff was injured in the manner testified to at trial. Thus, he was standing in the one spot where by extending his right arm his hand was in a position to be trapped in the hinge of the chute when it was opened and positioned. Whether the exhibits at the two trials show that position to be one or two feet either way appears meaningless. It is difficult to determine from the pictures the actual distances between the positions represented by the various marks. But we are talking about three marks representing positions within the space of the width of the dual rear tires on the truck, a distance certainly less than 5 feet.

Defendant had before him the testimony taken at the first trial. He was able to cross-examine the witnesses, including the plaintiff on the basis of the previously recorded testimony. The jury had before it the best evidence of the facts of the occurrence, the testimony of the witnesses. They heard the discrepancies and resolved them. The exhibits in controversy here were demonstrative at best and had no independent probative value.

We therefore affirm the judgment of the Circuit Court of Madison County.

Affirmed.

EBERSPACHER and KARNS, JJ., concur.