2023 IL App (1st) 230948-U

SECOND DIVISION
November 21, 2023

No. 1-23-0948

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| MARIA MAGANA and RAFAEL ZAMORANO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| WESTMONT LINCOLN, LLC, d/b/a OGDEN LINCOLN OF WESTMONT, and FORD MOTOR COMPANY, | ) ) | No. 18 L 013612 |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (WESTMONT LINCOLN, LLC, d/b/a OGDEN LINCOLN OF WESTMONT, | ) ) | Honorable Daniel Kubasiak, |
| Defendant-Appellee). | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court did not err in denying plaintiffs' request for a continuance to obtain a substitute expert witness, where the requested witness could not have provided material evidence.

¶ 2     Plaintiffs, Maria Magana and Rafael Zamorano appeal the trial court's order granting summary judgment to defendant, Westmont Lincoln, LLC, d/b/a Ogden Lincoln of Westmont

(Westmont Lincoln). Plaintiffs contend that the trial court abused its discretion in denying their motion to continue trial so that they could retain a new expert witness.

¶ 3    The record shows that plaintiffs filed a complaint against Westmont Lincoln and Ford Motor Company (Ford) on December 18, 2018. They alleged that on or about January 12, 2018, plaintiffs purchased a 2017 Lincoln Navigator (the vehicle), manufactured by Ford, from Westmont Lincoln. Plaintiffs asserted that after purchase, they began having problems with the vehicle. They brought the vehicle to Westmont Lincoln, and to another Ford dealership, for service in January, February, April and August of 2018, but the dealerships were unable to correct the problems. Thereafter, in August 2018, plaintiffs brought the vehicle to "an expert" for examination, who made observations which led him to the conclusion that the vehicle had been in an accident prior to plaintiffs' purchase. Plaintiffs first asserted a consumer fraud action against Westmont Lincoln, alleging that the Westmont Lincoln engaged in unfair and deceptive acts and practices by selling plaintiffs a vehicle that was falsely represented to be new. In the alternative, plaintiffs alleged that "[i]f the vehicle was not damaged between the time it left Ford Motor Company and the time it was sold to plaintiffs, it was defective in manufacture," claiming that Ford breached an express written warranty.

¶ 4    In support of defendant's complaint, they attached a report from Phil Grismer, who characterized himself as a "ASE Certified Master Automobile Technician." Grismer's report indicated that he inspected the vehicle in August 2018, and opined that he observed certain defects and apparent prior repairs. Grismer also provided an estimate of the vehicle's diminished value "in its current condition."

¶ 5    On February 1, 2019, Ford filed an answer to plaintiffs' complaint, denying that the vehicle was defective upon manufacture, and generally responding that it was "without knowledge or

2

information sufficient to form a belief as to the truth or falsity of" plaintiffs' allegations of an accident prior to plaintiffs' purchase.

¶ 6 Thereafter, the parties apparently engaged in settlement discussions, and the case was continued multiple times for status.

¶ 7 On June 6, 2019, Ford filed a motion for sanctions for spoliation of evidence, or in the alternative, for summary judgment. Ford alleged that "[o]n or about April 23, 2019, [p]laintiffs' counsel advised Ford's counsel by telephone that the subject vehicle had been in a front-end accident and that the vehicle was in an undriveable condition." Ford further asserted that plaintiffs "were aware of the need to preserve the vehicle in its current condition, but a family member drove the vehicle anyway and ran a stop sign resulting in the accident." Ford contended that plaintiffs' "failure to preserve the vehicle severely prejudice[d] Ford's ability to defend itself against the allegations of manufacturing defects" and that it:

> "would be inherently unfair to allow [p]laintiffs to introduce any expert opinions in this matter given that Ford was not provided any opportunity to inspect the vehicle in the same condition that [p]laintiffs' expert bases his report and conclusions on, and thus cannot (1) effectively inspect the vehicle to formulate its own opinions, or (2) effectively cross examine Mr. Grismer on his observations and conclusions formed during his inspection."

¶ 8 Ford requested that the case be dismissed as a discovery sanction, or that the court enter summary judgment for Ford. Ford also requested the court award its fees and costs to date.

¶ 9 On October 15, 2019, plaintiffs responded to Ford's motion. Among other things, they argued that Ford was not prejudiced by the recent accident, because the "two accidents involved two different sides" of the vehicle. They agreed that the "subsequent accident certainly complicates

things" but asserted that it did "not preclude a qualified inspector from discerning which damage belongs to which accident."

¶ 10    On December 13, 2019, the court entered a written order on Ford's motion. The court found "merit" to Ford's arguments that it was "severely prejudiced" by plaintiffs' failure to preserve the vehicle, and that it would be "inherently unfair" to allow plaintiffs to introduce its expert opinion without Ford having a similar opportunity. The court concluded, however, that it would not enter "sanctions against [p]laintiffs at this time." Instead, the court stayed discovery to allow Ford to perform its own expert investigation and to depose plaintiffs' expert regarding his prior investigation.

¶ 11    On February 4, 2021, the case appeared before the court for status, but no transcript appears in the record on appeal. The court entered a written order granting Ford leave to file a supplement to its motion for sanctions for spoliation of evidence, and/or a motion to reconsider the court's December 13, 2019, order.

¶ 12    Ford filed a motion to reconsider the court's December 13, 2019, order on February 25, 2021. Ford explained that the April 2019 accident was a "substantial front-end collision," and that the damage to the vehicle totaled over $14,000, which included

> "repair or replacement of the vehicle's frame, front suspension, wheels, steering gear and linkage, front bumper, front headlamps, radiator and radiator support, front left and right fender, front left and right side molding and fenders, windshield, restraint systems, left and right side pillars, front and rear doors, right quarter panel, rear tail lamps, and rear bumper."

¶ 13    Ford further contended that its own expert had conducted an examination of the vehicle, and confirmed that it was not possible to distinguish damage from the alleged first accident from

the second.[1] Ford reiterated its request that the court "(1) dismiss [p]laintiffs' claims against Ford and/or grant summary judgment in Ford's favor and against [p]laintiffs pursuant to Rule 219(c) and 735 ILCS 5/2-1005; [and] (2) award Ford its costs and fees to date pursuant to Rule 219(c)."

¶ 14     In support, Ford attached a report by its own expert, Aaron Dalrick, a Ford Field Service Engineer, who inspected the vehicle on January 22, 2021. In his report, Dalrick stated that he also reviewed the vehicle's repair history, along with Grismer's report and plaintiffs' complaint. Dalrick presumed, but did not determine, that the vehicle had been in an accident prior to plaintiffs' purchase, as plaintiffs alleged. He concluded, however, that the subsequent April 2019 accident was a "significant collision" with "substantial repairs." As a result, Dalrick could not "determine whether and to what extent any of the issues complained of existed prior to the second accident, and whether and to what extent any such issues were caused by the first accident as opposed to any separate mechanical or part failures." Dalrick further stated that "had the vehicle not been involved in the second accident, [he] could have attempted to verify any concerns made by the owner and as stated in Mr. Grismer's report while the vehicle was in the same or substantially similar condition at the time he conducted his inspection."

¶ 15     On April 30, 2021, the court entered an order granting Ford's motion to reconsider. The court determined that reconsideration was warranted based on the conclusions and findings of Ford's expert after he examined the vehicle. The court asserted that the report confirmed that Ford

---

[1] Ford clarified in a later motion, which was adopted by Westmont Lincoln, that by referring to the "first" and "second" accidents, it was not conceding that an accident occurred prior to plaintiffs' purchase, but was "[t]aking [p]laintiffs' allegations that the [v]ehicle was involved in an accident prior to their purchase in 2018 as true."

was prejudiced by the second accident, and that Ford was "now unable to determine whether the issues were caused by the first accident." The court found that Ford "set forth sufficient evidence that [p]laintiffs' failure to preserve the vehicle has severely prejudiced Ford's ability to defend itself against the allegations of manufacturing defects." Accordingly, the court granted Ford's motion to reconsider, and set a briefing schedule on Ford's motion for sanctions.

¶ 16    Thereafter, on May 20, 201, Ford filed a motion to clarify the court's order, noting that its motion for sanctions had previously been fully briefed, making a new briefing schedule unnecessary.

¶ 17    Plaintiffs responded to Ford's motion to clarify on May 25, 2021. Plaintiffs did not respond to Ford's contentions regarding the necessity of additional briefing. Instead, plaintiffs essentially argued that the court's order was incorrect, and that no sanctions were appropriate. Plaintiffs asserted that the court had wrongly expressed at a prior hearing that requiring plaintiffs to replace the vehicle was "not a big deal."[2] Plaintiffs contended that they did not have $70,000 to buy a replacement vehicle, that the median income in the U.S. was approximately $35,000, and that "[m]ost regular people do not have double their annual income to spend on something as basic and necessary as transportation." Plaintiffs contended that "penaliz[ing] [p]laintiffs for [their] post-litigation use [of the vehicle], *** fail[ed] to appreciate the realities of contemporary American life."

---

[2] This court notes that no transcripts of any court hearing in this matter appear in the record on appeal, and there is no support for plaintiffs' contention that the court ever made such a statement.

¶ 18   On July 16, 2021, the trial court entered an order agreeing that further briefing was unnecessary, and that the court would proceed with ruling on the previous motion for sanctions.

¶ 19   On September 9, 2021, the court entered an order on Ford's motion for sanctions. The court found that, while Ford filed a motion to stay discovery and advised plaintiffs to preserve the vehicle, it had not obtained a court order requiring plaintiffs to do so. The court therefore found that it could not conclude that plaintiffs' conduct "showed deliberate, contumacious, or unwarranted disregard of a court's authority," and concluded that sanctions were not warranted "at this time." The court, however, allowed Ford to amend its answer to assert a counterclaim for spoliation. In closing, the court categorically denied that it had said that buying a replacement vehicle was "not a big deal," affirmed that such a belief had played no part in its ruling, and stated that it recognized that "the general population does not have double their annual income to spend on transportation."

¶ 20   On September 28, 2021, Westmont Lincoln sought leave to file an answer and affirmative defenses to plaintiffs' complaint, alleging that, due to the ongoing "settlement negotiations and extended spoliation briefing," it had not known if the case "would be amicably resolved, [or] involuntarily dismissed." Westmont Lincoln's motion for leave to file an answer was granted, and Westmont Lincoln's answer and affirmative defenses was filed, on October 5, 2021. In Westmont Lincoln's answer, it generally denied plaintiffs' allegations that the vehicle had been in an accident, and that Westmont Lincoln had engaged in unfair and deceptive acts and practices by selling plaintiffs a vehicle that was misrepresented to be new. Westmont Lincoln alleged counterclaims for spoliation and failure to mitigate damages.

¶ 21   On October 1, 2021, Ford filed a counterclaim for spoliation of evidence, which was amended on November 29, 2021, and adopted by Westmont Lincoln. The counterclaim alleged

that plaintiffs breached their duty to preserve material evidence by allowing their son to drive the vehicle on the day of the collision in April 2019; by allowing repairs to the vehicle on or about July 3, 2019; and by allowing additional repairs on or about March 13, 2020. Ford further alleged that as a "direct and proximate result of the foregoing breaches, [it] ha[d] been substantially prejudiced" in that it was "unable to fully and adequately defend" against the allegations of the complaint and Grismer's opinions, and that it had been forced to incur attorney fees and costs to defend itself through trial.

¶ 22    Plaintiffs moved to dismiss the spoliation counterclaim, contending that Ford's inability to defend itself and the attorney fees spent were not "cognizable damages," and that Ford had actually inspected the vehicle multiple times, when plaintiffs previously brought the vehicle in for service.

¶ 23    On March 3, 2022, the circuit court denied plaintiffs' motion, finding that Ford had sufficiently alleged damages, and that the technicians who provided service to the vehicle were "not asked to, nor did they have the benefit of reviewing [p]laintiff's expert report when inspecting the [v]ehicle to test his findings and conclusions, which is a right Ford has but can no longer utilize."

¶ 24    On October 17, 2022, Ford filed a motion for summary judgment on its counterclaim for spoliation. Ford alleged that plaintiffs owed a duty to preserve the vehicle and its condition, that they had failed to do so, and that there was no genuine issue of material fact to preclude entry of summary judgment in Ford's favor.

¶ 25    That same day, Westmont Lincoln filed a motion to join Ford's motion for summary judgment on the spoliation counterclaim, adopting Ford's motion, and claiming that it was similarly substantially prejudiced by plaintiffs' spoliation.

¶ 26    On November 7, 2022, plaintiffs responded to the motion for summary judgment. Plaintiffs initially informed the court that Ford was now "out of the case" and that plaintiffs and Ford anticipated submitting settlement documents to the court soon. Regarding Westmont Lincoln, plaintiffs asserted that the spoliation claim failed, because the dealership would have examined the vehicle prior to sale. Plaintiffs asserted that their expert witness, Grismer, had explained in his deposition that "manufacturers require their dealers to prep new cars for sale" which included opening the hood to "check[ ] all fluids." Grismer further stated the damage he observed would have been easily noticeable to anyone with "a minimum of automotive experience." Accordingly, plaintiffs argued that Westmont Lincoln would have been aware of the damage from the first accident.

¶ 27    On November 19, 2022, Westmont Lincoln sought leave to reply, attaching a transcript from Grismer's November 4, 2022, discovery deposition. In that deposition, Grismer agreed that the vehicle had undergone "fairly extensive" repairs following the second accident, and that the vehicle was no longer in the "same condition as when [he] inspected it" in August 2018. Grismer also agreed that if the "vehicle [wa]s not in the same condition as when [Grismer] tested it," it would not be possible for someone to "analyze or review or test the theories put forth in [Grismer's] report."

¶ 28    On November 16, 2022, the court struck the upcoming December 12, 2022, jury trial date "in light of the advised settlement," and the matter was subsequently reset for a bench trial on April 17, 2022.

¶ 29    On December 1, 2022, the court entered a written order on the motion for summary judgment on the spoliation counterclaim. The court initially expressed that plaintiffs had settled their claims against Ford after the filing of the motion, and granted Westmont Lincoln's request to

join Ford's motion. The court then went on to consider the spoliation counterclaim as to Westmont Lincoln. The court found that plaintiffs made a "reasonable argument that Westmont [Lincoln] likely would have already inspected the [vehicle] prior to its sale as a 'new' [v]ehicle to [p]laintiffs," creating "an issue of fact that warrant[ed] denial of summary judgment on Westmont [Lincoln]'s counterclaim."

¶ 30    On January 4, 2023, plaintiffs filed a motion to dismiss Ford with prejudice pursuant to their settlement, which the court granted on January 11, 2023.

¶ 31    Thereafter, on March 7, 2023, plaintiffs filed an emergency motion to continue trial. Plaintiffs contended that they had learned in the last several days that Grismer, their expert witness, had "a heart insufficiency," that he underwent a heart operation, and that his condition had deteriorated to the point where he was confined to his bed and "near death." Plaintiffs asserted that "Grismer would have been the sole witness to establish the diminished value at the time the car was sold to [p]laintiffs. Without him, [p]laintiff[s] would have no evidence with respect to their damages, and therefore no case." Plaintiffs stated that, as a result of Grismer's unavailability, they would have to "engage a different valuation expert." Plaintiffs expressed that they "did not have time to firm up the new expert's identity," but they named another expert who they "expected" to engage.

¶ 32    On March 14, 2023, the circuit court granted the motion to continue, struck the April 17, 2023 trial date, and reset trial to May 8, 2023.

¶ 33    That same day, plaintiffs filed a motion "to use expert's deposition." Plaintiffs reiterated that Grismer was "near death" and requested that the court "exercise its equitable powers and convert [Grismer]'s discovery deposition into an evidence deposition and to permit its use at trial."

¶ 34    On March 24, 2023, Westmont Lincoln responded to plaintiffs' motion to use Grismer's deposition. Westmont Lincoln noted that Illinois Supreme Court Rule 212(a)(5) allowed the use of discovery depositions at trial in circumstances where the deponent is unavailable due to "death or infirmity," but the rule required the court to first find that the deponent was "not a controlled expert witness." Westmont Lincoln asserted that, because Grismer was a controlled expert witness, the court was without authority to allow plaintiffs' request.

¶ 35    Also on March 24, 2023, Westmont Lincoln filed a motion to bar Grismer's testimony. Westmont Lincoln asserted that the testimony should be barred for plaintiffs' spoliation of evidence, because the testimony "lacked foundation," and because Grismer relied on photographs which were not disclosed until after discovery had been closed.

¶ 36    On April 18, 2023, the court entered a written order on plaintiffs' motion to use Grismer's discovery deposition and on Westmont Lincoln's motion to bar Grismer's testimony. The court explained that plaintiffs' motion set forth that Grismer was near death, and the court "has subsequently been informed that Grismer has died." The court expressed that it was "sympathetic to [p]laintiffs' position" but found that "granting Westmont [Lincoln]'s Motion to Bar and denying [p]laintiffs' Motion to Use Expert Deposition is the proper conclusion under Illinois Law." The court noted that under Illinois Supreme Court Rule 212(a)(5), a discovery deposition could be used as an evidentiary deposition at trial, but only "if the court finds that the deponent is not a controlled expert witness." The court explained that there was "no dispute that Grismer is [p]laintiffs' controlled expert," and that plaintiffs had provided no other authority which would allow a controlled expert's discovery deposition to be used as evidence. Accordingly, the court denied plaintiffs' motion to use Grismer's discovery deposition and granted Westmont Lincoln's motion to bar Grismer's testimony.

¶ 37 Later that same day, on April 18, 2023, plaintiffs filed a "Renewed Emergency Motion to Continue Trial." Counsel for plaintiffs clarified his understanding that Grismer was "alive, but *** completely bedridden" and "in no condition to testify." Counsel acknowledged that he believed that using Grismer's discovery deposition was "unwarranted by Illinois law," but that he filed the prior motion to allow the use of his deposition, because the court had "brought up the issue." Now that the court had denied that motion, plaintiffs requested that the court continue the currently scheduled May 2023 trial date "for at least 4 months, to allow [plaintiffs] to engage a new valuation expert."

¶ 38 Westmont Lincoln responded to plaintiffs' motion on April 21, 2023. It contended that plaintiffs' motion to continue was "really a motion to obtain a new expert," and that "due to [p]laintiffs' failure to preserve the key evidence, *** [they were] in no position to obtain a new expert to present 'material' evidence." Westmont Lincoln specifically alleged that any " 'new' expert could never evaluate the vehicle's condition at the purported time of sale (the relevant measure of damages) because the collision and subsequent repairs substantially altered the vehicle's condition from its pre-sale condition." Moreover, even if the new expert could

> "parrot Grismer's opinion, [Westmont Lincoln] ha[d] been substantially prejudiced in that they are unable to fully and adequately defend themselves against the allegations in the Complaint and any valuation expert opinion, Grismer or otherwise, which are based on inspection, observations, and testing of the vehicle and its condition *prior* to [p]laintiffs' accident and two subsequent vehicle repairs." (Emphasis in original).

¶ 39    On April 26, 2023, the court held a hearing on plaintiffs' renewed emergency motion to continue trial. Although no transcript appears in the record, the court approved a bystander's report submitted by plaintiffs, which indicates that the parties

> "argued their respective positions consistent with the Renewed Motion and *** Opposition. Plaintiffs argued that, due to a physical disability of their expert, they should be permitted to obtain a new one. [Westmont Lincoln] argued that [p]laintiffs would not be able to obtain a new expert, including, but not limited to, because the subject car was involved in a post-litigation accident and therefore attempting to name a new expert would be futile. Plaintiffs argued that the post-litigation accident should not be dispositive and should not preclude them from obtaining a new expert due to the severe physical incapacity of their current expert."

The trial court then denied the motion to continue, "stating that this was a 2018 case and the [p]laintiffs had several extension opportunities to prepare the case for trial." Plaintiffs then "acknowledged that, without their expert, they would not be able to prove one of the elements of their claim (damages)." Plaintiffs suggested that Westmont Lincoln should file a motion for summary judgment, and that plaintiffs would "waive the notice and timing requirements" for filing such a motion.

¶ 40    That same day, the court entered a written order, setting out that it had reviewed the motion and opposition, and specifically referencing Westmont Lincoln's argument "that any effort by [p]laintiffs to obtain a new expert at this stage would be futile." The court noted that the motion was "the third motion to continue the trial date in this matter," and "[w]hile reserving ruling relating to any new expert [p]laintiffs would or could present, [p]laintiffs would have material difficulty presenting an expert opinion at this stage in the matter given this matter's history and

facts, including as presented in the Motion and Opposition." Accordingly, the court denied the motion.

¶ 41　The next day, on April 27, 2023, Westmont Lincoln filed a motion for summary judgment. Westmont Lincoln asserted that counsel for plaintiffs had

> "suggested to counsel for Westmont [Lincoln] that, to avoid the expense of a trial resulting in a directed verdict in Westmont [Lincoln]'s favor, that [p]laintiffs would concede to a Motion for Summary Judgment in Westmont [Lincoln]'s favor on the grounds that [p]laintiffs lack any evidence of damages in support of their consumer fraud claim against Westmont [Lincoln], the sole remaining claim in this matter."

¶ 42　On May 2, 2023, the court entered a written order on Westmont Lincoln's motion for summary judgment, finding that "as [p]laintiffs have conceded, without their expert Phil Grismer, [p]laintiffs cannot establish damages arising from their consumer fraud claim." The court granted the motion, and entered judgment in Westmont Lincoln's favor and against plaintiffs.

¶ 43　Plaintiffs timely filed a notice of appeal from that order on May 24, 2023.

¶ 44　In this court, plaintiffs argue that the trial court abused its discretion in denying their motion to continue trial. They contend that a medical emergency constitutes good cause for granting a continuance, and that the court improperly "refus[ed] to continue trial and permit [p]laintiffs to engage a substitute expert" after such a medical emergency.

¶ 45　Initially, we note that plaintiffs' framing of the issue, and the remainder of their opening brief, completely ignores much of the history of this case. Plaintiffs' appellant brief omits the ongoing dispute about plaintiffs' alleged spoliation of the evidence, and the fact that Grismer had been barred from testifying.

¶ 46    After Westmont Lincoln more fully set out the history of the case in its response brief, plaintiffs made one conclusory statement in their reply brief that it was "it was an error [for the court] to bar Mr. Grismer." This argument is forfeited because a party may not raise a new claim of error in a reply brief, and, nonetheless, plaintiffs' one sentence contention is unsupported by any argument, analysis, or authority. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (requiring appellants' briefs to contain "Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."); *Graham v. Lakeview Pantry*, 2019 IL App (1st) 182003, ¶ 26 (explaining that the appellate court "is not a repository for an appellant to foist the burden of argument and research" and that an appellant who fails to develop an argument or support it with appropriate authority thus forfeits review of that argument). Accordingly, the only issue before us is whether the court erred in denying plaintiffs' request for a continuance.

¶ 47    In general, a court may grant additional time for doing any act or taking any step or proceeding prior to judgment, for "good cause shown." 735 ILCS 5/2-1007 (West 2022). However, "[l]itigants do not have an absolute right to a continuance[,]" and the decision to deny or grant the request is left to the sound discretion of the trial court. *Somers v. Quinn*, 373 Ill. App. 3d 87, 96 (2007). We review the trial court's denial of a motion for a continuance for an abuse of discretion. *In re Marriage of LaRocque*, 2018 IL App (2d) 160973, ¶ 94. Under this standard, "the appellate court does not substitute its judgment for that of the trial court or determine whether the trial court acted wisely." *In re Parentage of I.I.*, 2016 IL App (1st) 160071, ¶ 29. A trial court abuses its discretion only when its decision is arbitrary, unreasonable, or fanciful or where no reasonable person would take the view adopted by the court. *LaRocque*, 2018 IL App (2d) 160973, ¶ 94.

¶ 48    A party seeking a continuance for the absence of material evidence must show:

> "(1) that due diligence has been used to obtain the evidence, or the want of time to obtain it; (2) of what particular fact or facts the evidence consists; (3) if the evidence consists of the testimony of a witness his place of residence, or if his place of residence is not known, that due diligence has been used to ascertain it; and (4) that if further time is given the evidence can be procured." Ill. S. Ct. R. 231(a) (eff. Jan. 1, 1970).

¶ 49    If, however, the court is "satisfied that the evidence would not be material, *** the continuance shall be denied," unless the court finds a continuance necessary "for the furtherance of justice." Ill. S. Ct. R. 231(b) (eff. Jan. 1, 1970); see *Wilson v. Reeves Red-E-Mix Concrete Prods.*, 29 Ill. App. 3d 448, 451 (1975) (affirming denial of continuance where defendant was not prejudiced by the inability to introduce the desired evidence). Moreover, a trial court should not grant a continuance unless there is a reasonable prospect of obtaining the desired evidence at some future time. *Cairo Lumber Co., Inc. v. Corwin*, 325 Ill. App. 319, 324 (1945); *Atwater v. Atwater*, 18 Ill. App. 3d 202, 207 (1974).

¶ 50    Here, the trial court denied plaintiffs' request for a continuance, finding that "[p]laintiffs would have material difficulty presenting an expert opinion at this stage in the matter given this matter's history and facts, including as presented in the Motion and Opposition." We agree that plaintiffs had no reasonable prospect of obtaining their desired evidence, and that any evidence they could obtain would not have been material. Accordingly, we find no abuse of discretion in the court's denial of a continuance.

¶ 51    Although plaintiffs argued in the trial court and here that their accident "should not preclude them from obtaining a new expert due to the severe physical incapacity of" Grismer, they

provided no explanation as to how a substitute expert could provide any material evidence to establish the damage element of their consumer fraud claim, which they conceded was lacking. The record shows that plaintiffs' April 2019 post-purchase accident, and the two substantial repairs in July 2019 and March 2020 considerably altered the vehicle's condition. As pointed out above, Ford's expert, Dalrick, concluded that he was unable to determine whether the damage existed prior to the April 2019 accident. Similarly, in Grismer's discovery deposition, he acknowledged that no one could review or test the theories in his report, because the vehicle was no longer in the "same condition as when [he] inspected it" in August 2018. Because any substitute expert that plaintiffs could retain would not have been able to examine the vehicle's condition at the relevant time, their testimony would not have been material. Accordingly, we find no abuse of discretion in the trial court's denial of a continuance to obtain a substitute expert witness in these circumstances.

¶ 52 For the foregoing reasons, we affirm the circuit court's denial of plaintiffs' motion for a continuance.

¶ 53 Affirmed.