NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240031-U

NO. 4-24-0031

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 30, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* D.B.-P., a Minor | ) | Appeal from the |
| (The People of the State of Illinois, | ) | Circuit Court of |
|      Petitioner-Appellee, | ) | Sangamon County |
|      v. | ) | No. 21JA65 |
| Qwantry P., | ) | |
|      Respondent-Appellant). | ) | Honorable |
| | ) | Karen S. Tharp, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Harris and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court's unfitness finding was not against the manifest weight of the evidence.

¶ 2    In June 2023, the State filed a petition to terminate the parental rights of respondent, Qwantry P., as to his child, D.B.-P (born February 2018). The trial court found respondent was unfit and that it was in the best interest of D.B.-P. to terminate respondent's parental rights. Respondent appeals, arguing the unfitness findings were against the manifest weight of the evidence. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In May 2021, the State filed a petition for adjudication of neglect with respect to D.B.-P. The petition alleged D.B.-P. was neglected pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(a)-(b) (West 2020)) in that (1) he was not receiving

proper care or supervision necessary for his well-being because his mother, Marie B., failed to abide by a safety plan and (2) his environment was injurious to his welfare due to Marie B.'s drug use. The trial court held a shelter care hearing, and the court granted temporary custody to the guardianship administrator of the Illinois Department of Children and Family Services (DCFS). The shelter care order stated respondent was present, did not object to D.B.-P.'s placement, and was appointed counsel.

¶ 5        The adjudicatory and dispositional orders did not mark respondent as present. Respondent's attorney was marked as present. No transcript is included in the record from the adjudicatory or dispositional hearings.

¶ 6        The August 2021 dispositional order had a checked box stating "that the minor's parents, guardian or legal custodian are unfit, unable or unwilling for some reason other than financial circumstances alone to care for, protect, train, educate, supervise or discipline the minor." The dispositional order also stated, "Parents must cooperate and show progress in services."

¶ 7        In June 2023, the State filed a motion for termination of parental rights. The motion alleged respondent was unfit pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). Specifically, the State alleged respondent was unfit due to (1) failing to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (*id.* § 1(D)(b)), (2) abandonment (*id.* § 1(D)(a)), (3) desertion for more than three months prior to commencement of the action (*id.* § 1(D)(c)), (4) depravity (*id.* § 1(D)(i)), (5) failing to make reasonable efforts to correct the conditions which were the basis for removal during any nine-month period following the adjudication of neglect, specifically July 14, 2021, to April 14, 2022, and April 14, 2022, to January 14, 2023 (*id.* § 1(D)(m)(i)), and (6) failing to make

reasonable progress towards return of the minor during the same nine-month periods (*id.* § 1(D)(m)(ii)).

¶ 8　　　　Prior to the unfitness hearing, Marie B. signed a consent to adoption, relinquishing her rights to D.B.-P.

¶ 9　　　　The unfitness hearing commenced in December 2023. Respondent was not present, but his counsel stated he was ready to proceed. The State asked the trial court to take judicial notice of the adjudicatory order, dispositional order, and all permanency orders from the life of the case. The State also offered into evidence various service plans spanning the life of the case, which the court admitted without objection. The court also admitted without objection certified copies of respondent's previous convictions in Illinois and Indiana.

¶ 10　　　　Tanya Champion testified she was the caseworker from the case's inception to July 2022. At the beginning of the case, respondent was not incorporated into the service plan because she had no contact with him. Champion conducted a diligent search and attempted to contact respondent by phone and mail. She also asked Marie B. to contact respondent for her. Respondent did not contact her before she left the case in July 2022. Respondent did appear at a scheduled visit with D.B.-P. for Marie B., but the visit had already been canceled. The foster parent did not report respondent sending gifts or letters to D.B.-P., nor did he otherwise attempt to visit D.B.-P. Champion acknowledged respondent was the nonoffending parent.

¶ 11　　　　Aiyana Davis testified she was the caseworker from July 2022 to February 2023. Davis was able to get in contact with respondent by phone, and he was added to the service plan. He was required to cooperate with the agency, keep in contact with the caseworker, and complete an integrated assessment. Respondent did not complete the integrated assessment while Davis was overseeing the case. Davis spoke with respondent twice while she had the case,

despite contacting him twice a month. Davis scheduled the integrated assessment for respondent, but he did not show up. Respondent told Davis he was going to send her "the paperwork for all of his services that he claimed he completed." Davis never received any paperwork. After respondent's phone number was disconnected, Davis contacted him through e-mail and through respondent's sister, who provided her with another phone number. Respondent sent Davis a court document stating he was D.B.-P.'s father. Davis explained to respondent why he needed to complete services, but respondent still did not complete the integrated assessment or cooperate with Davis. The foster mother, who was respondent's grandmother, told Davis respondent "had not even tried to reach out." Davis attempted to set up visits for respondent with D.B.-P., but he did not contact her. Respondent did not send gifts, letters, or money for D.B.-P. On cross-examination, Davis denied respondent was a fit, willing, and able parent. Davis also stated it was not possible respondent was visiting D.B.-P. without her knowledge.

¶ 12         Randi Frawley testified she was the present caseworker. She took over the case in February 2023. Frawley spoke to respondent on the phone once, but the first time Frawley met respondent was in March 2023, at the courthouse during unrelated proceedings. She provided respondent with her phone number and e-mail address. Respondent provided Frawley with two phone numbers and an e-mail address. Frawley called and e-mailed respondent weekly for four months but never received a response. Respondent never completed the integrated assessment. Frawley was unable to arrange visits with D.B.-P. because respondent never reached out to her. The foster parent told Frawley respondent had not attempted to visit D.B.-P. If respondent had reached out, Frawley would have had no concerns about arranging visits with D.B.-P.

¶ 13         Respondent presented no evidence.

¶ 14        The trial court found respondent unfit for (1) failing to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare, (2) abandoning the minor, (3) failing to make reasonable efforts to correct the conditions which were the basis for removal during the period of April 13, 2022, to January 14, 2023, and (4) failing to make reasonable progress towards return of the minor during the same nine-month period.

¶ 15        The trial court proceeded to the best interest hearing and found it in D.B.-P.'s best interest that respondent's parental rights be terminated.

¶ 16        This appeal followed.

¶ 17                              II. ANALYSIS

¶ 18        On appeal, respondent argues the trial court erred by finding him unfit on all four grounds. We note, respondent has made no argument as to the best interest finding. See Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). We accordingly only address the unfitness finding.

¶ 19        "Under the Juvenile Court Act, parental rights cannot be terminated absent the parent's consent unless the court first determines, by clear and convincing evidence, that the parent is an 'unfit person' as defined by section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2010))." *In re N.G.*, 2018 IL 121939, ¶ 28 (citing 705 ILCS 405/2-29(2) (West 2010)). The trial court's determination that a parent is unfit will not be reversed on appeal unless the finding is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence only where "the opposite conclusion is clearly apparent." *Id.* "Although section 1(D) of the Adoption Act sets forth numerous grounds under which a parent may be deemed 'unfit,' any one ground, properly proven, is sufficient to enter a finding of unfitness."

*In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). We therefore focus on respondent's contention the court's finding he failed to make reasonable progress was against the manifest weight of the evidence.

¶ 20  Section 1(D)(m)(ii) of the Adoption Act provides a parent may be found unfit if he fails "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act." 750 ILCS 50/1(D)(m)(ii) (West 2022). "Reasonable progress" is an objective standard, where a parent must make "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re D.D.*, 2022 IL App (4th) 220257, ¶ 38. Reasonable progress exists when the court "can conclude that *** the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

¶ 21  As to reasonable progress, respondent argues, "The evidence to consider should focus on the relevant nine-month periods for offending parents and not nonoffending parents which should not have to complete services based on them being fit, willing, and able." Respondent does not explain how shifting the focus to the offending parent results in his reasonable progress. "A court of review is entitled to have the issues clearly defined with pertinent authority cited and cohesive arguments presented." *In re M.M.*, 2016 IL 119932, ¶ 30. "This court is not a repository for an appellant to foist the burden of argument and research." *Graham v. Lakeview Pantry*, 2019 IL App (1st) 182003, ¶ 26. Arguments not properly developed in an appellant's opening brief "are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 22　　　　Respondent presents us with no case law or cohesive argument to show he is excused from complying with services as the nonoffending parent. In fact, the record belies respondent's contention he was fit, willing, and able. The dispositional order states, "the minor's *parents* *** are unfit, unable, or unwilling ***." (Emphasis added.) There is no transcript in the record from the dispositional hearing, so we must presume the dispositional order accurately represents the appropriate order of the trial court. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (holding it is the appellant's burden to present a sufficiently complete record and, absent a record, "it [is] presumed that the order entered by the trial court [is] in conformity with law and had a sufficient factual basis").

¶ 23　　　　The dispositional order also stated, "*Parents* must cooperate and show progress in services." (Emphasis added.) Respondent was not present at the dispositional hearing, but he was represented by counsel. Respondent was aware he was required to cooperate with DCFS. Yet respondent makes no argument on appeal he made actual reasonable progress towards the return of D.B.-P. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Indeed, any such argument would contradict the clear evidence respondent took no steps towards the return of the minor. Respondent was only minimally in contact with DCFS for a brief period, did not complete the integrated assessment, completed no services, and did not visit with D.B.-P. We therefore conclude the trial court's finding that respondent failed to make reasonable progress was not against the manifest weight of the evidence. See *N.G.*, 2018 IL 121939, ¶ 29.

¶ 24　　　　　　　　　　　　　　III. CONCLUSION

¶ 25　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 26　　　　Affirmed.